Charles Lambiase, J.
This claim under the title of ‘ ‘ charles m. morhous, as Administrator with Limited Letters of the Estate of Rita Mantel ” was filed to recover damages for the wrongful death of the deceased above named, allegedly caused through the negligence of the State of New York, its officers and employees, in the particulars set forth in the claim to some of which we will refer hereinafter. The claim was duly filed, has not been assigned, and has not been submitted to any other officer or tribunal for audit or determination. It appearing upon the trial that Daniel E. Ryan was then the administrator with limited letters of administration of the estate of the deceased herein having been duly appointed as such by order of the Surrogate of the County of Clinton, New York on September 11, 1957 and having duly qualified thereunder and that Charles M. Morhous was no longer such administrator, an order of this court was duly made substituting said Daniel E. Ryan as administrator with limited letters of administration of *284 the estate of the deceased as claimant herein without prejudice to any and all proceedings theretofore had. The deceased, Bita Mantel, was survived by her husband who, at the time of the trial, had remarried, and by her infant son.
On July 25, 1953 the deceased, Bita Mantel, age 23, a resident of the city of Montreal, Province of Quebec, Canada, died by drowning in the waters of Lake Champlain, and particularly in that part of said lake which then was and now is a part of the Barge Canal system of the State of New York, and upon the shores of which were then and are now located the Barge Canal terminal facilities within the city of Plattsburgh, New York. On that day deceased, together with her husband, Boger Mantel, her two-year-old son Ivan, one Lise. Tremblay, and one Paul E. Lelievre, escorting the last named, were visiting the city of Plattsburgh, New York. She and the others apparently knew that there was a bathing beach within the city of Plattsburgh, New York known as the Plattsburgh Municipal Beach. They started out for this beach which was quite close to the motel where they were staying, but instead they reached the Barge Canal terminal facilities which were also quite near. There they found the waters of the lake, a long pier, a breakwater, and a crescent shaped exposure of sand approximately 200 feet in length.
The deceased, her husband, and the others waded into the waters that early afternoon. There came a time when the deceased and Lise Tremblay were the only ones of their party in the water. They were playing and frolicking around. Neither could swim. Sometime during this interval when they were alone in the water, they walked out farther from the shore _ all the while facing toward the water and away from the shore. When they were about 15 feet from the shore, they dropped off the edge of a so-called ‘ drop off ’ ’, underneath the water, into very deep water and were drowned.
It is alleged that the State was negligent in that the drop off lay beneath the waters unknown to deceased where it could not be seen by her; in that there were no signs or warnings indicating the presence of the drop off; in that there were no signs prohibiting bathing or picnicking at the time and at the place; in that the beach was not roped off so as to indicate the location of deep water; in that the State had actual knowledge that the public over the years used the beach for recreational purposes including bathing and wading; in that there were no depth markers in the water; in that the State of New York created a dangerous condition by said drop off; in that the creation of the sand beach leading to the water and to the drop *285 off was deceptive; and in that the State of New York thus created a trap, nuisance, and place of danger to the public, including the deceased herein, as the result of which deceased was drowned.
The State of New York, on the other hand, resists any liability and maintains in substance that the deceased was a trespasser or, at best, a bare licensee toward whom it owed only the duty to abstain from affirmative acts of negligence and from injuring intentionally.
The State of New York acquired the land in question for the purpose of its development as a Barge Canal terminal. Such development was a necessary element in the navigation and in the use of the Barge Canal system of the State of New York. All installations were on New York State property and were used for the purposes of carrying on Barge Canal navigation. In the course of said development the State of New York did considerable dredging in the locality so that boats could come in and tie up at the pier. At various times as the dredging operations took place, sand was taken or sucked up from underneath the waters and was thrown on to the shore where it piled up and formed sand dunes of considerable size and height. The dredging operations created a drop off underneath the water at a point about 15 feet out from the water’s edge, which drop off was not visible from the surface of the water. In the course of time and through the action of the water some of the sand was spread along the shore line and out under the water and toward the drop off. The land under the water sloped gradually from the shore toward the drop off.
Prior to the acquisition of the property involved herein by the State of New York and its development as a Barge Canal terminal and while in private ownership, said property and the adjoining waters of the lake had been used for a long period of time by some persons for bathing, swimming and recreational purposes; and it has been established that since the acquisition by the State and its development as aforesaid, persons frequently used said terminal waters and the adjoining shore for such purposes. There is every reason to believe that the State of New York, its officers and employees, knew or should have known that such use was being made and had been made of said facilities.
The question is, what is the proper measure of the State’s duty or care, if any, to the deceased? The Barge Canal facilities and the development at the place of this unfortunate occurrence were a necessary element in the navigation and in the use of *286 the Barge Canal system of the State of New York. Such development by the State was entirely upon its own property. Claimant’s intestate was on said property and in said water neither by invitation of the State of New York nor on its business. She was there for her own purposes which were totally disconnected with the State’s business. Clearly, the deceased had no right to go upon the property and into the water for the purpose for which she did, for the property and the Barge Canal terminal facilities located thereon were not intended for any such use. Her act in going thereupon and into the water was in violation of the purpose for which said facilities were designed and maintained by the State of New York.
Long-continued acquiescence in the use of said waters by persons as hereinbefore noted contrary to the purposes thereof did not become an invitation. (Vaughan v. Transit Development Co., 222 N. Y. 79, 82, citing Stevens v. Nichols, 155 Mass. 472.)
It is well settled that the only duty which an owner of land owes to a trespasser or bare licensee is to abstain from affirmative acts of negligence and from injuring intentionally. (Morse v. Buffalo Tank Corp., 280 N. Y. 110; Vaughan v. Transit Development Co., 222 N. Y. 79; Hall v. International Ry. Co., 184 App. Div. 925, affd. 227 N. Y. 619; Birch v. City of New York, 190 N. Y. 397; Weitzmann v. Barber Asphalt Co., 190 N. Y. 452; see, also, Beck v. Carter, 68 N. Y. 283.)
If it is, as the State urges, that the deceased was a trespasser from the moment she waded out into the water and continued as such up to the time of her death, the State of New York cannot be held liable because it was guilty of no affirmative act of negligence. (Panunzio v. State of New York, 266 App. Div. 9, affd. 292 N. Y. 625.) Whether the deceased was such a trespasser as contended by the State of New York or was at best a mere licensee (Simmons v. Poughkeepsie Sav. Bank, 255 App. Div. 887, affd. 282 N. Y. 626), we deem it unnecessary to decide because in either event, as we view the case, the State of New York did not violate any duty which it owed her in the premises.
We have concluded that there is nothing in the evidence which would warrant a finding that claimant’s intestate’s death was due to any act of negligence on the part of the State of New York or its employees, or that the State of New York was maintaining a nuisance. (Pendino v. State of New York, 196 Misc. 184, appeal dismissed 98 N. Y. S. 2d 664, and cases cited therein.) In view of the foregoing we do not reach the question of contributory negligence of the deceased.
*287 We are constrained to the conclusion that the claim herein must be dismissed. The claim, therefore, is dismissed upon the merits.
The foregoing constitutes our written and signed decision upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.