DONALD JACQUES et al., Respondents, *v.* VILLAGE OF LAKE PLACID, Appellant.

Third Department, June 1, 1972.

*Herron, Lawler & Fischer (Henry A. Fischer, Jr.,* of counsel), for appellant.

*McCormick, LaPan & Brooks (John T. De Graff, James M. Brooks* and *Margrethe R. Powers* of counsel), for respondents.

KANE, J. This is an appeal from a judgment of the Supreme Court, entered December 3, 1970 in Essex County, upon a verdict rendered at a Trial Term in favor of plaintiffs.

The Village of Lake Placid owns and maintains a public recreation area on the westerly shore of Mirror Lake consisting of a wooded park, a sand beach and a swimming dock. The park area was lighted at night and open to the public continuously. The beach was open generally during daylight hours from June to September and the village employed lifeguards to supervise the use of the beach area. When the beach area was closed for swimming, the public was allowed to walk through the park and beach area, and fish from the dock. There are four entranceways to the beach but only one sign was used to close the beach and that was usually placed on the right side of the beach house facing the water. There were no village ordinances regulating the hours of beach operation. The village police patrolled the park on a routine basis and were responsible for ejecting bathers when the beach was closed.

On July 28, 1968 at approximately 2:00 A.M. respondent Donald Jacques sustained grievous injuries when he dived off the dock in shallow water and struck his head on the bottom of the lake. Jacques suffered a fracture of the fifth cervical vertebra, causing a compression of the spinal cord and rendering him a quadriplegic for the remainder of his life.

Appellant argues that the evidence did not show any negligence on the part of the village and the plaintiff was negligent as a matter of law. On the issue of the negligence of the village, we cannot say that the verdict was contrary to the weight of the evidence. The duty of a municipality which operates a recreational area is more than that of a private landholder and that duty goes beyond the mere maintenance of the physical condition of the facility in a reasonably safe condition (*Caldwell* v. *Village of Island Park,* 304 N. Y. 268, 273). The park area, beach and swimming dock admittedly had no barriers, real or suggested, to dissuade visitors from venturing onto the dock when the beach was closed for swimming. The area was shown to be somewhat of a tourist attraction, used frequently by them as well as local residents. The summer population of the village generally quadrupled, recreation being a significant economic factor for the municipality and its business. Extensive use of this facility was readily foreseeable and the duty of supervision and maintenance had to be commensurate with the consequences that might be reasonably anticipated. In view of the park area being open continuously, it was incumbent upon the village to demarcate the closed area from that park area. The presence of a single sign near the beach house where towels were rented was not a sufficient deterrent. There was demonstrated an abundance of knowledge that swimming took place

after closing and it could be easily concluded that the patrol by the police was a casual effort, ineffective also as a deterrent.

The construction of the dock with a diving edge extending into an area of three to five feet of water depth and the lack of warning signs showing water depth also presented issues of fact as to negligent construction and maintenance.

It is inferable from the evidence that the volunteer firemen of the village, of whom respondent was a member, were granted more leniency regarding use of the swimming area when closed. In fact, although disputed, testimony indicated that on the very night in question the police patrolling requested the firemen, including respondent, to keep the noise down.

The question of Jacques' legal status was sharply in dispute, but, considering all of the proof, it was properly submitted to the jury as an issue of fact. Jacques had a right to be at the park at the time of his injury, and whether going swimming relegated him to the status of a trespasser or licensee was an issue of fact. The open availability of the park, the sporadic enforcement procedures (including inferences that firemen were given special consideration of use), and the lack of visible barriers marking the forbidden area, all raised questions for jury determination. (*Collentine* v. *City of New York,* 279 N. Y. 119; *Christian* v. *City of Binghamton,* 28 A D 2d 611.)

On the issue of contributory negligence, again the record demonstrates an issue of fact. Jacques had been to the park swimming on one other occasion some 12 years prior to the accident, at a time when the dock construction was considerably different. On the night in question, he was with other firemen whose greater knowledge of the area and permission to use it he depended upon, and, although there was testimony regarding warnings to him, it was disputed. He successfully accomplished one dive from the lifeguard chair, and the second and last dive was from the diving edge, which from its very presence he could assume sufficient depth of water. (*Wartels* v. *County Asphalt,* 29 N Y 2d 372; *Rossman* v. *La Grega,* 28 N Y 2d 300.)

The judgment should be affirmed, with costs.

SIMONS, J. (dissenting). No matter how the case is glossed, the tragic but undeniable facts are that this adult plaintiff dived from an unlighted and unsupervised dock, which he knew was closed to swimmers, into unfamiliar waters obscured by mist and darkness.

His recovery against the village cannot be affirmed by simply assuming negligence on the part of the village and citing *Caldwell* v. *Village of Island Park* (304 N. Y. 268). In the *Caldwell*

case, an infant plaintiff was injured when she was on a beach at a time when it was open to the public. Furthermore, the plaintiff's lack of concern for his own safety cannot be explained away on a burden of proof basis by comparing him to amnesiacs (*Wartels* v. *County Asphalt,* 29 N Y 2d 372) or wrongful death victims acting under emergency circumstances (*Rossman* v. *La Grega,* 28 N Y 2d 300).

The fact is that plaintiff was a trespasser. On the night of the accident, he was swimming in an area that was closed and he knew it was closed.

There is no question that the park area was lighted and was open to the public generally for walking or sitting at night. If plaintiff had been injured there he would have been an invitee entitled to defendant's reasonable care. (*Caldwell* v. *Village of Island Park, supra.*) But it must come as a shock to the village fathers to have the court extend that invitation and find that the beach area and docks were open to the public for swimming on a 24-hour basis, day or night. Without doubt, the village was at liberty to limit its invitation with respect to the area used (*Sanders* v. *Favorable Realty Corp.,* 290 N. Y. 591) and facilities used (*Brown* v. *American Mfg. Co.,* 209 App. Div. 621) as well as times of day swimming was permitted (*Firfer* v. *United States,* 208 F. 2d 525, 527). It did so here.

The majority makes much of the fact that there were no signs or barriers prohibiting use of the dock for swimming at night and the absence of any regulating ordinances by the village. These omissions were not the proximate cause of injury. Jacques admitted that he knew the dock was closed and that he was not supposed to be there[1]. In view of this, it is difficult to know what kind of signs or barriers would have been needed to stop him. Furthermore, the absence of signs and barriers does not imply an invitation to use the dock. (*Cunningham* v. *City*

1. p. 394 "Q. Now, at that time, Mr. Jacques, you knew the beach was closed, didn't you?
A. I knew it was closed to the general public and the tourists, but, as volunteer fireman, and that they had been going swimming before and had been going there; if we weren't supposed to be there we wouldn't have been there at that time in the morning, we wouldn't have been out there swimming."
p. 395 " Q. Didn't you know that you shouldn't have been there?
A. Yes, I knew I wasn't supposed to go there".
p. 414 " Q. At that time you knew the beach was closed didn't you?
A. Right, I knew the beach was closed".
" Q. Didn't you know that you shouldn't have been there?
A. Yes, I knew I wasn't supposed to go there ".
" Q. And it was obvious to you that the beach was closed, wasn't it?
A. I said it was ".

*of Niagara Falls,* 242 App. Div. 39, affd. 269 N. Y. 644; *Pope* v. *State of New York,* 198 Misc. 31, affd. 277 App. Div. 1157.)

The majority also base liability on inferences which presumably permitted the jury to find the plaintiff, if not an invitee, was a licensee swimming with the express or implied permission of the village. (See *Meiers* v. *Koch Brewery,* 229 N. Y. 10.) Thus, it is inferred that volunteer firemen had a special privilege to swim after hours. That claim was made by Jacques. It was not supported by any other witness and Jacques admitted that he never discussed such a special privilege with anyone and never heard it discussed. It was an assumption he made, but it was without any demonstrated basis in fact.

Next, it is inferred that the policing of the area was "casual". The evidence is just the opposite. By all accounts, the police patrolled the beach regularly. Jacques' companions admitted the police had stopped them from swimming at night before, the latest incident having been only three or four nights earlier. On the night in question, fireman Strack and his passengers hid in the car to avoid detection when the police patrol came into the park. Two other firemen, Coolidge and Conway, were on the beach. When the police stopped and told Coolidge he and his friends (including Jacques), must get out, that there would be no swimming, Coolidge answered that they had already been swimming and were leaving. The plaintiff was on the dock at that time and denied hearing any part of this conversation (although in earlier testimony he said the police only told them to keep the noise down). After the police left, they all went swimming. This evidence does not support a finding that the village permitted people to swim at night or knowingly acquiesced in that use of the dock. At the time of his injury, the only duty the village owed plaintiff was to refrain from affirmative acts of negligence or intentional injury. (*Cunningham* v. *City of Niagara Falls, supra; Ryan* v. *State of New York,* 13 Misc 2d 282, affd. 19 A D 2d 696; see, also, Restatement, Torts 2d, § 333 *et seq.*) On this record, it was error to submit the question of whether plaintiff was an invitee or a licensee to the jury. The judgment should be reversed, and a new trial ordered. (*Sheingold* v. *Behrens,* 275 App. Div. 671, 686.)

HERLIHY, P. J., COOKE and SWEENEY, JJ., concur with KANE, J.; SIMONS, J., dissents and votes to reverse in an opinion.

Judgment affirmed, with costs.