520 So.2d 684 (1988)
William A. JOHNSON, As Personal Representative of the Estate of William Garrett Johnson, Appellant,
v.
RINKER MATERIALS, INC., a Florida Corporation, Appellee.
No. 87-325.
District Court of Appeal of Florida, Third District.
March 1, 1988.
Floyd, Pearson, Richman, Greer, Weil, Zack & Brumbaugh and Herman J. Russomanno and Sally R. Doerner, Miami, for appellant.
*685 Highsmith, Strauss & Glatzer and Phillip Glatzer, Miami, for appellee.
Before SCHWARTZ, C.J., and HUBBART and JORGENSON, JJ.
HUBBART, Judge.
This is an appeal by the plaintiff from an adverse final summary judgment entered in a wrongful death action arising out of a fatal, late-night accident on the defendant's land. It appears that the plaintiff's decedent was killed while joy-riding on an allterrain cycle (ATC) up a sand hill located on the premises of the defendant's cement plant and sand quarry. The central issue presented for review is whether the defendant breached any legal duty owed to the plaintiff's decedent by failing to warn the latter concerning the known dangerous condition of the sand hill  the sole claimed negligence in this case. For the reasons which follow, we affirm.

I
The facts of this case, for summary judgment purposes, are as follows.[1] The defendant Rinker Materials, Inc. [Rinker] owns and operates a large cement plant and sand quarry located at N.W. 137 Avenue and N.W. 12 Street in Dade County, Florida. In connection with its cement manufacturing operations, Rinker maintains large hills of raw materials on the premises; the contours of these mounds frequently change as the material therein is used or discarded in the cement manufacturing process. These mounds, in turn, have long attracted ATC enthusiasts who liked to joy-ride over them for recreational purposes; in particular, the plaintiff's decedent, William Garrett Johnson [Garrett] and his friends frequently engaged in such ATC joy-riding on the Rinker property, with Garrett having been there over twenty times. This trespassing, however, was clearly not tolerated by Rinker as it posted a twenty-four-hour guard at the entrance to its property and a periodic roving guard on weekends with strict instructions to expel all trespassers, posted and regularly maintained approximately one hundred "no trespassing" signs around the fenced perimeter of the property, and reported all trespassing incidents to the police. Pursuant to this policy, Garrett and others known to him had been previously chased off the Rinker property by Rinker personnel. Despite these efforts, however, Rinker was aware that ATC enthusiasts, like Garrett, would frequently break their security and joy-ride on the aforesaid hills; there was, in fact, one ATC accident involving injuries at the plant prior to the fatality in this case.
On September 6, 1985, a weekend night, Garrett and ten to twelve of his friends met at approximately 9:00 P.M. at a convenience store in west Dade County where they consumed a few beers. As was their custom, the group then rode their ATCs north on N.W. 137 Avenue until they came to the entrance of the Rinker property. Instead of proceeding straight through the gateway entrance, however, they went around a fenced area which opened up around a quarter of a mile beyond the guard house at a point where a train track entered the plant area. Two of Garrett's companions were sure that the Rinker guard saw them enter the property because they went within several hundred yards of the guardhouse. Garrett and his passenger were in the lead with their headlights on.
The group rode over a small, black slag hill, traversed a flat distance achieving a top speed of about 30 M.P.H., and proceeded toward a white, "sugar" sand hill composed of silica used in the manufacture of cement. The hill was about ten to twelve feet high with its contours clearly visible from the plant lights in the distance and the ATC headlights. Garrett, with a passenger *686 aboard, went straight up the sand hill, unaware that the opposite side had recently been excavated to create a sheer cliff; as a result, Garrett and his passenger fell over the precipice to the ground at the base of the hill. The ATC landed on top of Garrett, and he died at the scene. Garrett was well aware that this and other hills on the property were constantly being dug away by Rinker in connection with its business; consequently, he always checked out the hills prior to riding them. He did not, however, do so on this fatal night, having ridden the subject hill the previous day without incident.
William Johnson, as personal representative of Garrett's estate, brought a wrongful death action against Rinker alleging that Rinker had a duty to warn Garrett about the dangerous condition created by the excavation of the "sugar hill," that its failure to do so constituted a breach of that duty, and that this breach was the proximate cause of Garrett's death. There were no allegations, however, that the failure to provide such warnings constituted willful or wanton negligence on Rinker's part; in fact, plaintiff's counsel both below and on appeal concedes that no claim for willful or wanton negligence could be made in this case.
The defendant Rinker filed a general denial answer and later moved for summary judgment based on depositions and affidavits filed in the cause which revealed the above-stated facts. Rinker argued that it had breached no duty owed to Garrett because he was a trespasser to whom no duty was owed except to refrain from willful and wanton negligence which, concededly, was not committed. The plaintiff countered that Garrett was a discovered trespasser because the Rinker guard saw Garrett and his friends enter the property  and, accordingly, Rinker owed a duty to Garrett to warn him of the alleged hidden dangerous condition of the subject sand hill; he claimed that genuine issues of material fact were presented on these issues which precluded summary judgment. The trial court entered final summary judgment for Rinker concluding that, as a matter of law, no such warning was required because the dangerous condition of the sand hill was open to ordinary observation, and consequently no legal duty was breached as to Garrett, whom the trial court found to be an uninvited licensee on Rinker's property. The plaintiff appeals.

II
We have no trouble in concluding that, as a matter of law, the defendant Rinker breached no duty owed to the plaintiff's decedent, Garrett, by failing to warn the latter concerning the known dangerous condition of the sand hill in question, and accordingly affirm. We reach this result based on the following briefly-stated legal analysis.

A
First, unlike the trial court, we think it plain on this record that Garrett was a trespasser on Rinker's land, not an uninvited licensee. Rinker (a) posted a permanent twenty-four-hour security guard and a weekend roving security guard on the premises, both with strict orders to expel all trespassers, (b) posted and regularly maintained approximately one hundred "no trespassing" signs around the fenced perimeter of its property, and (c) reported all trespassing incidents to the police. Clearly, Garrett and the other ATC riders who successfully evaded these security measures to joy-ride on the property were not tolerated trespassers and, therefore, were not uninvited licensees.[2] They were unwanted, untolerated, and uninvited trespassers on Rinker's property; indeed, Garrett and his companions were well aware of Rinker's active measures to keep them off the premises, having been chased off the property on at least one occasion prior to the fatal accident. The fact that Garrett and his companions were clever enough to frequently evade Rinker's security *687 measures on a number of occasions, including the subject incident, does not convert them into univited licensees.[3]

B
Second, the only duty owed by Rinker to Garrett, as a trespasser, was "to avoid willful and wanton harm to him, [which, concededly, is not involved in this case] and upon discovery of his presence, to warn him of any known dangers not open to ordinary observation." Wood v. Camp, 284 So.2d 691, 693-94 (Fla. 1973). Rinker, however, did not discover Garrett's presence on the property until Garrett and his friends were spotted by the security guard who, admittedly, was several hundred yards away from Garrett. By that time, it was obviously too late to post signs or shout any intelligible warnings to a large group of noisy cyclists who were traveling fast in the opposite direction. A landowner only has a duty to exercise reasonable care to warn discovered trespassers of certain known dangerous conditions on the land, and clearly such duty was not breached in this case. Restatement of Torts (Second) § 337 (1965).

C
Third, even if it be assumed that Garrett and his companions were constantly trespassing in a limited area of Rinker's land, where these sand hills were apparently located,[4] which would arguably give rise to a duty to post warning signs of the known dangers in that limited area of the land, see, e.g., Savignac v. Department of Transportation, 406 So.2d 1143 (Fla. 2d DCA 1981), rev. denied, 413 So.2d 875 (Fla. 1982); Restatement of Torts (Second) § 335 (1965), or that, despite all indications to the contrary, a verbal warning was somehow possible when Rinker's guard saw Garrett on the land, we entirely agree with the trial court that the danger posed by the sand hill in question was open to ordinary observation, and, consequently, no warning of the danger was required in any event. As the Restatement indicates,
"The possessor [of land] is entitled to assume that trespassers will realize that no preparation has been made for their reception and will, therefore, be on the alert to observe the conditions which exist upon the land. In addition, he is also entitled to assume that [the trespassers] will be particularly careful to discover dangerous conditions which are inherent in the use to which the possessor puts the land."

Restatement of Torts (Second) § 335, comment f, at 190 (1965) (emphasis added). Here, Rinker operated a cement plant and sand quarry on its premises and, in connection with its business, created sand hills thereon from which sand was constantly being removed to make cement; as a result, the contours of the sand hills were constantly changing as an inevitable part of its business. Given the fact that the formation and alteration of such sand hills constitute an inherent condition of the use to which Rinker put its land, we think Rinker had every right to expect that Garrett and his ATC companions would discover the dangerous condition of these hills prior to traversing them.
All agree that the sand hill over which Garrett rode to his death was fully illuminated both by Rinker's plant lights as well as Garrett's ATC headlights. The dangerous condition of this sand hill was, therefore, open to Garrett's ordinary observation had he chosen to circle the sand hill and to see what was plainly visible on the other side of the hill. It is urged, however, that the hill looked safe to Garrett from the *688 side on which he approached it and that his failure to circle the hill to see the precipitous drop off on the other side constitutes, at worst, comparative negligence on his part which cannot defeat his estate's right to recover in this action. We cannot agree. At a minimum, it was Garrett's responsibility, as a trespasser on Rinker's land, to circle this sand hill to discover its dangerous character, given the use to which Rinker had put this land  a use well known to Garrett, which involved the inevitable creation of contour-changing sand hills dangerous to ATC riders. His failure to do so is not simply comparative negligence; instead, it is a failure on his part, tragically a fatal one, to discover and observe a danger which was open to ordinary observation. This being so, and given Garrett's status as a trespasser on Rinker's land, it is clear that Rinker had no duty to warn of this danger and is, therefore, not legally responsible for Garrett's death. Accordingly, the final summary judgment under review is, in all respects,
Affirmed.
NOTES
[1] The facts are taken from the discovery depositions and affidavits filed in connection with the summary judgment proceeding below. As required by law, all conflicts in the evidence and inferences therefrom are stated in a light most favorable to the plaintiff, the party against whom the summary judgment was entered. See, e.g., Holl v. Talcott, 191 So.2d 40 (Fla. 1966); Salgueiro v. Fiumara, 305 So.2d 5 (Fla. 3d DCA 1974); 49 Fla.Jur.2d Summary Judgment § 54 (1984).
[2] Cf. Marks v. Delcastillo, 386 So.2d 1259 (Fla. 3d DCA 1980) (no active security in face of continuing trespass; plaintiff was licensee), rev. denied, 397 So.2d 778 (Fla. 1981); Libby v. West Coast Rock Co., 308 So.2d 602 (Fla. 2d DCA) (same), cert denied, 325 So.2d 6 (Fla. 1975).
[3] See, e.g., Bovino v. Metropolitan Dade County, 378 So.2d 50, 51 (Fla. 3d DCA 1979) ("A trespasser is a person who enters upon the premises of another without license, invitation, or other right and intrudes for some definite purpose at his convenience or as an idler."); W. Prosser & W.P. Keaton, The Law of Torts § 58, at 393 (5th ed. 1984); Restatement of Torts (Second) § 329 (1965) ("A trespasser is a person who enters or remains upon land in possession of another without privilege to do so created by the possessor's consent or otherwise").
[4] The record is not clear whether the subject hills were located in a limited area on Rinker's land or were scattered throughout a very large area on the land. We will assume, however, for summary judgment purposes, that the hills were located in a limited area of Rinker's land.