415 S.E.2d 145

**Paul HUFFMAN, Plaintiff
Below, Appellee,**

v.

**APPALACHIAN POWER COMPANY, a
Virginia Corporation Qualified to do
Business in West Virginia, et al., Defen-
dants Below,**

**Appalachian Power Company, a Virginia
Corporation Qualified to do Business
in West Virginia, Appellant.**

No. 20118.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 1, 1991.

Decided Dec. 19, 1991.

Concurring Opinion of Justice
Neely Jan. 8, 1992.

Rehearing Denied March 19, 1992.

A.L. Emch, Thomas J. Hurney, Jr., Jackson & Kelly, Charleston, for appellant.

Allan H. Masinter, William E. Pepper, Charleston, for appellee.

MILLER, Chief Justice:

This is an appeal from a final order of the Circuit Court of Kanawha County, dated March 13, 1990, which denied the motions of the defendant below, Appalachian Power Company (APCO), to set aside a verdict in favor of the plaintiff below, Paul Huffman, in a personal injury action. The plaintiff was injured when he received an electrical shock while climbing a high-voltage transmission tower owned by APCO and located in a public park in Kanawha County. On appeal, APCO raises numerous assignments of error. The dispositive point is APCO's assertion that there was no evidence showing that it had willfully or wantonly caused injury to the plaintiff, a trespasser on its tower. We agree, and we reverse the judgment of the circuit court.

## I.

There is no material dispute as to the facts of the case. At the time of his injury, the plaintiff was an eighteen-year-old senior at South Charleston High School and had lived independently since the age of seventeen.[1] The plaintiff was enrolled in a cooperative education program which allowed him to attend classes in the mornings and work in the afternoons. He had a previous history of climbing various structures and had been injured in falls while climbing on an interstate highway access ramp and on a rock formation known as "Devil's Tea Table," located in Little Creek Park in South Charleston.

In the early afternoon of November 8, 1984, the plaintiff left school and went to the home of his cousin, Harry Wallot, where the two youths may have drunk several beers. The plaintiff and Wallot then rode the plaintiff's motorcycle around the Spring Hill area of South Charleston until they arrived at Little Creek Park, a public park located within the city limits. The plaintiff drove through the park to the end of a dirt road, where he parked the motorcycle and walked with Wallot along a hiking trail towards Devil's Tea Table.

APCO's transmission tower No. 279 was located alongside the hiking trail approximately 150 yards from the dirt road. A soap box derby track, a picnic pavilion, picnic tables, and a playground are located nearby. Built in 1923, tower No. 279 is

---

1. The plaintiff's father was dead and his mother lived in South Carolina. The plaintiff testified that at the time of the accident, he was living with a friend in South Charleston.

made of steel, is approximately forty feet high, and is located within APCO's right-of-way. Climbing pegs are located on one leg of the tower, the lowest peg being four feet nine inches from the ground, the next lowest, four feet higher. At the time of the accident, the three electrical lines on the tower carried 46,000 volts of electricity. Signs reading "Danger, High Voltage, Keep Off" were posted on the tower approximately twelve to fifteen feet from the ground.

After sitting at the base of the tower for a while, the plaintiff and Wallot began to climb the tower to get a better view of the area. The plaintiff had apparently reached the highest cross-piece on the tower when he received an electrical shock.[2] The plaintiff fell to a lower brace, and Wallot ran for help. The plaintiff subsequently fell to the ground, where Wallot found him when he returned. The plaintiff suffered severe and permanent injuries as a result.

On August 4, 1988, the plaintiff filed suit against APCO[3] in the Circuit Court of Kanawha County, alleging that APCO had violated industry safety standards and failed to use reasonable care in the maintenance of tower No. 279, thereby proximately causing the plaintiff's injuries. In its answer, APCO alleged that the plaintiff's injuries were the proximate result of his own conduct.

Trial commenced in the circuit court on November 9, 1989. On November 20, 1989, the jury returned a verdict for the plaintiff in the amount of $1.5 million. The verdict was subsequently reduced by the court to reflect the jury's finding that APCO was 78 percent at fault and the plaintiff was 22 percent at fault in causing the injuries. APCO subsequently filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The circuit court denied the motion by order dated March 13, 1990, and entered judgment for the plaintiff. It is from this order that the defendant now appeals.

## II.

The dispositive point is APCO's contention that it breached no duty it owed to the plaintiff which would support the civil action below. APCO contends that because the plaintiff was a trespasser on its property, the only duty it owed to him was to refrain from willfully or wantonly injuring him. The plaintiff contends that because APCO controls a dangerous instrumentality, it owed him a high degree of care.

### A.

"A trespasser is one who goes upon the property or premises of another without invitation, express or implied, and does so out of curiosity, or for his own purpose or convenience, and not in the performance of any duty to the owner." *Waddell v. New River Co.*, 141 W.Va. 880, 884, 93 S.E.2d 473, 476 (1956). *See generally* 65 C.J.S. *Negligence* § 63(3) (1966 & Supp. 1991); 62 Am.Jur.2d *Premises Liability* §§ 72, 114 (1990). The owner or possessor of property[4] does not owe trespassers a duty of ordinary care: "[W]ith regard to a trespasser, a possessor of property only need refrain from wilful or wanton injury."[5] *Miller v. Monongahela Power Co.*,

---

2. The plaintiff remembered feeling electricity in his right foot although he did not remember where he was at the time. Wallot was not observing the plaintiff at the time. The plaintiff does remember climbing to the highest cross-piece, however, and burn marks were found at that spot on the tower. There is no question that the plaintiff suffered an electrical shock while on the tower.

3. The plaintiff also filed suit against American Electric Power Company, American Electric Power Service Corporation, and the City of South Charleston and its Board of Park and Recreation Commissioners. These parties were all dismissed from the litigation upon directed

verdicts at the close of the plaintiff's evidence at trial.

4. Although most of the case law referred to in this portion of our opinion concerns trespasses on real property, the same rules apply to unauthorized entries onto personal property which is capable of being trespassed upon. *See, e.g.,* *Torres v. Southern Pac. Transp. Co.*, 584 F.2d 900 (9th Cir.1978); *Woodis v. Oklahoma Gas & Elec. Co.*, 704 P.2d 483 (Okla.1985). *See generally* 65 C.J.S. *Negligence* § 63(8).

5. In Syllabus Point 1 of *Miller v. Monongahela Power Co.*, 184 W.Va. 663, 403 S.E.2d 406, *cert. denied,* —— U.S. ——, 112 S.Ct. 186, 116 L.Ed.2d

184 W.Va. 663, 668, 403 S.E.2d 406, 411, *cert. denied,* — U.S. —, 112 S.Ct. 186, 116 L.Ed.2d 147 (1991). *See Buckley v. Valley Camp Coal Co.,* 324 F.2d 244 (4th Cir.1963); *Waddell v. New River Co., supra; Simmons v. Chesapeake & O. Ry. Co.,* 97 W.Va. 104, 124 S.E. 503 (1924). Thus, under ordinary circumstances, the possessor of property is not liable to trespassers for injuries caused by his failure to use reasonable care to maintain the property in a reasonably safe condition or to carry on his activities so as not to endanger them. *See generally Restatement (Second) of Torts* § 333 (1965); 65 C.J.S. *Negligence* §§ 63(7), 63(9).

■ There are, of course, exceptions to the rule of nonliability to trespassers. Where the trespass is merely technical, for example, the possessor of the property is not insulated from liability for his failure to exercise reasonable care. 65 C.J.S. *Negligence* § 63(19). We considered an issue of technical trespass in *Miller v. Monongahela Power Co., supra.* The plaintiff, an electrician employed by a chinaware manufacturer, was injured when he erroneously entered an unmarked power company substation located in the same area as seven smaller electrical substations owned by the employer. The evidence showed that Mr. Miller had only recently been employed as an electrician, had never been to any of the substations, and had no experience with the much higher voltage flowing through the power company's substation. The power company had intentionally failed to mark its substation so as to prevent vandals and other trespassers from identifying its property.

We compared the facts in *Miller* with those of earlier cases in which unsuspecting victims committed a technical trespass by inadvertently coming into contact with uninsulated power lines located within the power company's easement. *See Grillis v. Monongahela Power Co.,* 176 W.Va. 662, 346 S.E.2d 812 (1986) (painter hired to paint railroad bridge injured when his equipment came in contact with transmission wire under bridge); *Gault v. Monongahela Power Co.,* 159 W.Va. 318, 223 S.E.2d 421 (1976) (landowner looking for lost livestock on own property came into contact with sagging high voltage wire). *See also Lancaster v. Potomac Edison Co.,* 156 W.Va. 218, 192 S.E.2d 234 (1972) (house painter on ladder came in contact with high voltage wires close to house); *Humphreys v. Raleigh Coal & Coke Co.,* 73 W.Va. 495, 80 S.E. 803 (1914) (coal miner came in contact with exposed wire in seldom-used air course in coal mine). In each case, the victim had a right to be where he was at the time of the injury. Contact with the power lines was due to the fact that they were dangerously close to the ground or to a structure where it could reasonably be anticipated that others would at some time lawfully be present. Each of the victims was a trespasser only to the extent that he came in contact with the wires.

In *Miller,* the plaintiff's intrusion onto the power company's property was likewise inadvertent. Although Mr. Miller entered the property without permission, he believed that he was on the property of his employer, where he had a right to be. Moreover, his error was, at the very least, facilitated by the power company's decision not to identify its substation. The general rule is that one who unlawfully enters onto the property of another by mistake or accident, particularly where he was misled into doing so by some conduct of the owner or occupant of the property, has not committed such a trespass as will preclude him from recovering damages for injuries incurred on the premises as a result of the negligence of the owner or occupant. 62 Am.Jur.2d *Premises Liability* §§ 115, 116; 65 C.J.S. *Negligence* §§ 63(3), 63(7), 63(19).

147 (1991), we reaffirmed our adherence to the common law distinctions between trespassers and other entrants on property for purposes of premises liability: "We have consistently recognized and applied the distinctions for liability purposes among trespassers, licensees and invitees." Some jurisdictions have abolished these distinctions; most, however, retain the distinction between trespassers and other entrants onto property. *See* Annot., 22 A.L.R. 4th 294 (1983) (modern rule conditioning landowner's liability on status of injured party); 62 Am. Jur.2d *Premises Liability* §§ 84–86, 183 *et seq.*

Under this rule, Mr. Miller was guilty of a "technical trespass." Consequently, the power company was not permitted the benefit of the rule of nonliability to trespassers.

■ The plaintiff in this case cannot make the same claim. He intentionally climbed the tower, which he knew to be the property of another, without invitation,[6] for his own purposes or convenience. Other jurisdictions have identified such actions as constituting a trespass against the power company for purposes of premises liability. *See, e.g., Caraglio v. Frontier Power Co.,* 192 F.2d 175 (10th Cir.1951); *Foster v. Alabama Power Co.,* 395 So.2d 27 (Ala.1981); *Ryckeley v. Georgia Power Co.,* 122 Ga. App. 107, 176 S.E.2d 493 (1970); *Moseley v. Kansas City,* 170 Kan. 585, 228 P.2d 699 (1951); *Kirschner v. Louisville Gas & Elec. Co.,* 743 S.W.2d 840 (Ky.1988); *Miller v. Suburban Power Co.,* 41 Ohio App. 70, 179 N.E. 202 (1930); *Woodis v. Oklahoma Gas & Elec. Co.,* 704 P.2d 483 (Okla.1985); *Texas Power & Light Co. v. Burt,* 104 S.W.2d 941 (Tex.Civ.App.1937). *See generally* 26 Am.Jur.2d *Electricity, Gas & Steam* §§ 68–70 (1966); 29 C.J.S. *Electricity* § 43 (1965 & Supp.1991). While the plaintiff's contact with the electricity may have been inadvertent, his proximity to the source of the electricity was due solely to the fact that he was trespassing on APCO's property. He had to climb almost to the top of the forty-foot tower to come in contact with the electricity. He was certainly not encouraged by the action or inaction of the power company to believe he had a right to be there. His intrusion onto tower No. 279 was not a mere technical trespass.

■ The plaintiff also intimates that he was not a trespasser because the tower was located in a public park. Generally speaking, one is not a trespasser while he is in a place to which the public generally is invited. *See generally* 65 C.J.S. *Negligence* § 63(3). However, an invitee or licensee who exceeds the scope of his invitation or license may become a trespasser. *See, e.g., Nicoletti v. Westcor, Inc.,* 131 Ariz. 140, 639 P.2d 330 (1982); *Morris v. Atchison, Topeka & Santa Fe Ry. Co.,* 198 Kan. 147, 422 P.2d 920 (1967); *Rich v. Tite-Knot Pine Mill,* 245 Or. 185, 421 P.2d 370 (1966). *See generally* 65 C.J.S. *Negligence* §§ 63(2), 63(4). Regardless of his status in the park,[7] when the plaintiff left the ground and began climbing the tower, he exceeded the scope of any invitation or license he may have had to be upon the park grounds and became a trespasser as to APCO. *See Crosby v. Savannah Elec. & Power Co.,* 114 Ga.App. 193, 150 S.E.2d 563 (1970); *Moseley v. Kansas City, supra; Miller v. Suburban Power Co., supra; Texas Power & Light Co. v. Burt, supra.*

Consequently, we conclude that the plaintiff was, in fact, a trespasser upon APCO's tower.

### B.

■ We have not had occasion to consider whether our dangerous instrumentality rule for those who operate high voltage electricity lines subsumes our traditional rule as to the duty owed to a trespasser. In Syllabus Point 2 of *Miller v. Monongahela Power Co., supra,* we reiterated our dangerous instrumentality rule as to electricity:

> " ' "Those who operate and maintain wires charged with dangerous voltage of electricity are required to exercise a degree of care commensurate with the dangers to be reasonably apprehended therefrom; but they are not insurers against all injury therefrom." Pt. 1, syllabus, *Savannah Elec. & Power Co.,* 114 Ga.App. 193, 150 S.E.2d 563 (1966).

---

6. Several jurisdictions have held that the mere presence of the tower or of climbing pegs does not constitute an invitation for this purpose. *See Garrett v. Arkansas Power & Light Co.,* 218 Ark. 575, 237 S.W.2d 895 (1951); *Urban v. Central Mass. Elec. Co.,* 301 Mass. 519, 17 N.E.2d 718 (1938); *Ryckeley v. Georgia Power Co.,* 122 Ga.App. 107, 176 S.E.2d 493 (1970); *Crosby v.*

7. There is evidence that the park was closed and that the plaintiff and Wallot entered the park by bypassing a locked gate. These facts would cast doubt on the plaintiff's assertion that he was not a trespasser. *See Jacques v. Village of Lake Placid,* 39 A.D.2d 163, 332 N.Y.S.2d 743 (1972).

*Maggard v. Appalachian Electric Power Co.,* 111 W.Va. 470 [163 S.E. 27 (1932) ].' Syllabus Point 7, *Sutton v. Monongahela Power Co.,* 151 W.Va. 961, 158 S.E.2d 98 (1967)."

*See also* Syllabus Point 1, *Gault v. Monongahela Power Co., supra.*

As earlier noted, we have found that the plaintiff in *Miller* was a technical trespasser. He had been directed to go to his employer's substation by his supervisor. He believed that the substation he entered belonged to his employer and that belief was facilitated by the lack of any signs identifying it as a Monongahela Power Company substation. We also noted that the power company's "own employee testified that the Power Company *intentionally induced confusion about ownership* to discourage vandals and others who might wish to trespass on Monongahela's property." [8]  184 W.Va. at 669, 403 S.E.2d at 412. (Emphasis in original).

There appears to be general agreement that under certain conditions, the possessor of property which contains a dangerous condition or instrumentality may be liable if he is aware or reasonably should be aware that trespassers are constantly intruding upon a limited area thereof which may expose them to the dangerous condition. This rule is set out in Section 335 of the *Restatement (Second) of Torts* (1965):

"A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

"(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or seriously [*sic* ] bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

"(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved."

This rule is further circumscribed by comment (e) to Section 335, which makes it clear that a reasonable warning of the dangerous condition is all that is necessary.[9] The limited nature of the duty to warn is reinforced by the statement in comment (f) that "[t]he possessor is entitled to assume that trespassers will realize that no preparation has been made for their reception and will, therefore, be on the alert to observe the conditions which exist upon the land." Finally, the entire theory of liability begins with the premise that the possessor of the dangerous facility "knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land[.]" [10]  *Restatement (Second) of Torts* § 335.

8. Of some importance in *Miller* is that voltage handled at the employer's substation was considerably lower than at the power company's substation. Consequently, the testing equipment the plaintiff was using while safe for the lower voltage, offered inadequate protection at Monongahela's substation.

9. Comment (e) to Section 335 of the *Restatement* provides, in material part: *"Extent of duty to warn.* The duty which the rule stated in this Section imposes upon a possessor of land is not an absolute duty to warn the trespasser of even highly dangerous conditions. It is a duty merely to use reasonable care to give a reasonably adequate warning."

10. This same terminology is used in Section 334 of the *Restatement,* relating to highly dangerous activities carried on by the owner or occupant of the land. In comment (c) to Section 334, this statement is made as to the possessor's knowledge:

"The words 'from facts within his knowledge,' which are used in this Section to qualify the phrase 'should know,' are inserted to indicate that the possessor is required only to draw reasonably correct conclusions from data known to him, and is not required to exercise a reasonable attention to his surroundings or to make any inspection or investigation in regard to them."

Moreover, comment (d) to Section 334 emphasizes that liability does not arise unless trespassing in the limited area is constant and persistent:

"In order that the possessor of land may be subject to liability under the rule stated in this Section, it is necessary that he know, or from facts within his knowledge should know, that persons constantly and persistently intrude upon some particular place within the land.

■ Thus, for a trespasser to establish liability against the possessor of property who has created or maintains a highly dangerous condition or instrumentality upon the property, the following conditions must be met: (1) the possessor must know or, from facts within his knowledge should know, that trespassers constantly intrude in the area where the dangerous condition is located; (2) the possessor must be aware that the condition is likely to cause serious bodily injury or death to such trespassers; (3) the condition must be such that the possessor has reason to believe trespassers will not discover it; and (4), in that event, the possessor must have failed to exercise reasonable care to adequately warn the trespassers of the condition. *See generally* 62 Am.Jur.2d *Premises Liability* § 206.

A case analogous to the present one is *Miller v. General Motors Corp.*, 207 Ill. App.3d 148, 152 Ill.Dec. 154, 565 N.E.2d 687 (1990), *appeal denied*, 139 Ill.2d 597, 159 Ill.Dec. 109, 575 N.E.2d 916 (1991), in which the twenty-year-old plaintiff trespassed into the defendant's pump house. In the pump house was a balcony where high voltage electrical equipment was stored. The balcony was located nine feet above the floor of the pump house. The plaintiff, who testified he was curious to see what was on the balcony, was able to scale the wall by holding onto eye bolts sticking out of the wall. In the process of pulling himself onto the balcony, he grabbed a live wire and severely injured his hand. The jury awarded the plaintiff $2 million in compensatory damages and $1.5 million in punitive damages and found the plaintiff to be 25 percent negligent.

On appeal, the court granted judgment notwithstanding the verdict for the defendant. It began its analysis with this statement: "Whether a duty exists in the first instance is a question of law." 207 Ill. App.3d at 153, 152 Ill.Dec. at 156, 565 N.E.2d at 689. (Citation omitted). The court then proceeded to an analysis of the trespass law, including references to Sec-

tions 334 and 335 of the *Restatement,* and came to these conclusions:

"Even though the use and transmittal of electricity is dangerous, it is a passive condition on the land, and the courts of this State have consistently found that a landowner owes only a duty to refrain from wilful and wanton misconduct in these circumstances. . . .

\*　　\*　　\*　　\*　　\*　　\*

"Courts in this State and other jurisdictions have routinely held that landowners need not anticipate that an isolated trespasser will climb into an area of electrical danger. (See *Celner v. Central Illinois Electric & Gas Co.* (1951), 343 Ill. App. 310, 99 N.E.2d 214; *Austin v. Public Service Co.* (1921), 299 Ill. 112, 132 N.E. 458; *Gherra v. Central Illinois Public Service Co.* (1918), 212 Ill.App. 48; *Rodriguez v. Schlittenhart* (Ct.App. 1989), 161 Ariz. 609, 780 P.2d 442; *Foster v. Alabama Power Co.* (Ala.1981), 395 So.2d 27; *Bennett [v. Public Service Co. of New Hampshire* (1st Cir.1976) ] 542 F.2d 92; *Glastris v. Union Electric Co.* (Mo.Ct.App.1976), 542 S.W.2d 65; *Ryckeley [v. Georgia Power Co.* (1970) ] 122 Ga.App. 107, 176 S.E.2d 493; *Ross v. Sequatchie Valley Electric Cooperative* (1955), 198 Tenn. 638, 281 S.W.2d 646; *Caraglio v. Frontier Power Co.* (10th Cir.1951), 192 F.2d 175; *Gouger v. Tennessee Valley Authority* (1949), 188 Tenn. 96, 216 S.W.2d 739.)" 207 Ill. App.3d at 160–61, 152 Ill.Dec. at 160–61, 565 N.E.2d at 693–94.

*See also Bennett v. Public Service Co.,* 542 F.2d 92 (1st Cir.1976) (applying New Hampshire law under Section 335 of the *Restatement* to find insufficient evidence to establish liability; plaintiff had climbed electric pole near an abandoned pump house). Other courts have found trespassers not to meet the foregoing standards on a variety of grounds. *Torres v. Southern Pac. Transp. Co.,* 584 F.2d 900 (9th Cir.1978) (no evidence that trespassers were constantly intruding upon an area in which plaintiff

It is not enough that he know or have reason to know that persons persistently roam at

large over his land."

was injured); *Cooper v. Unimin Corp.*, 639 F.Supp. 1208 (D.Idaho 1986) (no showing of constant trespass in the area where plaintiff was injured; no liability under Section 335 of the *Restatement* where the condition is not of such a nature that a trespasser would not discover it); *Johnson v. Rinker Materials, Inc.*, 520 So.2d 684, 687 (Fla.App.1988) (no duty to warn where the danger "was open to ordinary observation"); *Lindquist v. Albertson's, Inc.*, 113 Idaho 830, 748 P.2d 414 (1987) (though history of frequent trespasses in nearby area, only one prior trespass in immediate area of plaintiff's injury); *Watters v. Buckbee Mears Co.*, 354 N.W.2d 848 (Minn.App. 1984) (no duty to warn where no reason to expect trespasser would not discover the condition; owner's duty to trespassers under Section 335 of the *Restatement* restricted to concealed dangers); *Denton v. L.W. Vail Co.*, 23 Or.App. 28, 541 P.2d 511 (1975) (no history of frequent trespasses in immediate area where plaintiff was injured).

It appears that we have adopted a less restrictive rule with regard to maintaining a dangerous condition or instrumentality where trespassing children are known to frequent the area. In *Sutton v. Monongahela Power Co.*, 151 W.Va. 961, 971, 158 S.E.2d 98, 104 (1967), we acknowledged that we do not recognize the doctrine of attractive nuisance,[11] but we do have a similar rule for children:

"Although the Attractive Nuisance Doctrine is not recognized in this State, this Court has adopted a rule quite similar to that Doctrine and has held that where a dangerous instrumentality or condition exists at a place frequented by children who thereby suffer injury, the parties responsible for such dangerous condition may be held liable for such injury if they knew, or should have known, of the dangerous condition and that children frequented the dangerous premises either for pleasure or out of curiosity. *Love v. Virginian Power Co.*, 86 W.Va. 393, 103 S.E. 352 [ (1920) ]; *Waddell v. New River Co.*, 141 W.Va. 880, 93 S.E.2d 473 [ (1956) ]; *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 [ (1964) ]."

Research has not disclosed that we have utilized this doctrine with respect to trespassing adults such as the plaintiff. There are several reasons the rule should not be made applicable. First, the public policy behind our less restrictive rule is the recognition that children are often heedless and, because of their inexperience and immaturity, cannot fully appreciate the harm that can occur from a dangerous condition or instrumentality.[12] These considerations are not present with an adult trespasser.

Second, Section 335 of the *Restatement* acknowledges that adequately posted warnings of the danger will absolve the owner or possessor of the property of liability. With young children, such warnings might be of little value because of the child's inability to read and comprehend the nature of the warning. Again, this would ordinarily not be the case with an adult trespasser.

Finally, Section 335 expresses the point that where trespassers would be expected to discover the nature of the dangerous instrumentality, the landowner is not required to give warning. Young children, because of their inexperience and immaturity, would lack an understanding of the danger. This would not be true for an adult trespasser.

Turning to the facts of this case, the plaintiff, being eighteen, had achieved adult status. *See* W.Va.Code, 2–2–10(aa)

11. The attractive nuisance doctrine was designed to ameliorate the harshness of the rules controlling liability towards trespassers and licensees with regard to children. This was in recognition of their natural curiosity and inability to understand the full nature of dangerous perils. *See* 62 Am.Jur.2d *Premises Liability* §§ 323 *et seq.*

12. Recently, in *Pino v. Szuch*, 185 W.Va. 476, 479, 408 S.E.2d 55, 58 (1991), we spoke of the underlying reasons for the rebuttable presumption that a child between the age of seven and fourteen cannot be guilty of contributory negligence: "The rationale for the rebuttable presumption for children between the ages of seven and fourteen is that these children usually lack the intelligence, maturity, and judgmental capacity to be held accountable for their actions."

(1989); W.Va.Code, 2–3–1 (1974). *See also* Syllabus Point 3, *Pino v. Szuch,* 185 W.Va. 476, 408 S.E.2d 55 (1991).[13] The record reveals that the plaintiff was of above average intelligence and had completed some military training. He acknowledged that he was aware that there were electrical wires on the top of the tower and that he knew electrical wires could be dangerous. Warning signs which stated "Danger, High Voltage, Keep Off" were affixed to the bottom of the tower. These signs were affixed to the cross bars of the tower approximately twelve to fifteen feet from the ground.

■ From this evidence, as a matter of law, we conclude that the plaintiff cannot recover against APCO. We do not find sufficient evidence that the plaintiff and others constantly and persistently intruded on tower No. 279 or that APCO was aware of such intrusions.[14] This is the predicate step for a trespasser to establish liability. We do not doubt that the high voltage wires at the top of the tower would constitute a dangerous instrumentality, i.e., a condition which is likely to cause death or serious bodily harm. However, the final component to establish liability is missing. APCO had no reason to believe that a trespasser would not discover the risk. Furthermore, APCO had exercised reasonable care by the posting of warning signs on the tower.

### III.

APCO moved, at the close of the plaintiff's evidence, for a directed verdict pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure.[15] A similar motion was made at the close of all the evidence. Both of these motions asserted, among other grounds, that there was insufficient evidence to establish liability. Under Rule 50(b),[16] a motion was made ten days after the judgment on the jury verdict was rendered, requesting that judgment notwithstanding the verdict be entered. One of the grounds was that the plaintiff had failed to establish a *prima facie* case.

■ In *Cline v. Joy Manufacturing Co.,* 172 W.Va. 769, 310 S.E.2d 835 (1983), we recognized that in order to assert a Rule 50(b) motion for judgment notwithstanding the verdict, a defendant must

13. Syllabus Point 3 of *Pino* states: "A child age fourteen or older is presumed to be capable of being negligent, and if the child relies on the lack of such capacity, the burden of proving it is on the child."

14. At trial, the court permitted the plaintiff to introduce evidence of several other injuries that had occurred when persons climbed other transmission towers. These trespasses were not in the vicinity of tower No. 279 and would not qualify as "constantly intrud[ing] upon a limited area," as it applies to APCO, within the meaning of Section 335. This standard is more restrictive than the rule in ordinary negligence cases set out in Syllabus Point 3 of *Gable v. Kroger Co.,* 186 W.Va. 62, 410 S.E.2d 701 (1991): "To be admissible at all, similar occurrence evidence must relate to accidents or injuries or defects existing at substantially the same place and under substantially the same conditions. Evidence of injuries occurring under different circumstances or conditions is not admissible."

15. Rule 50(a) provides:

"A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same

extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury."

16. The relevant portion of Rule 50(b) is:

"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict.... A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed."

move for a directed verdict at the close of the plaintiff's case and assert therein the insufficiency of the evidence to establish a *prima facie* case. A similar motion for a directed verdict must be made at the close of all the evidence. Finally, the motion for judgment notwithstanding the verdict must be filed within ten days from the date of the entry of the judgment order on the jury verdict.[17] We stated in *Cline* that "our rule is parallel to the federal rule," citing federal cases and 5A Moore's Federal Practice § 50.05 (1977).[18] 172 W.Va. at 774, 310 S.E.2d at 840.

We recognize that a motion by the defendant for judgment notwithstanding the verdict is controlled by the same standard as a motion for a directed verdict, which is set out in Syllabus Point 3 of *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964):

> "When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right to recovery, the trial court should direct a verdict in favor of the defendant."

*See also Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986); *Hinkle v. Martin*, 163 W.Va. 482, 256 S.E.2d 768 (1979).

Thus, we hold that in considering whether a Rule 50(b) motion for judgment notwithstanding the verdict should be granted, the evidence should be considered in the light most favorable to the plaintiff, but, if it fails to establish a *prima facie*

right to recover, the court should grant the motion.

We have previously outlined why the plaintiff, a trespasser, has failed to establish a *prima facie* case of liability against APCO. We find that the circuit court erred in not granting APCO's motion for judgment notwithstanding the verdict.

### IV.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Kanawha County and remand this case with directions to enter judgment notwithstanding the verdict in favor of APCO.

Reversed and remanded with directions.

WORKMAN, Justice, dissenting in part, and concurring in part:

(Filed Dec. 19, 1991)

I concur with the majority in the law it has enunciated with respect to the standard for establishing the liability of a property owner to a trespasser.

However, as the majority points out, we have not previously had occasion to consider this particular question, so it is new law. Throughout the proceedings in this matter, APCO has contended that because defendant was a trespasser, the only duty it owed to him was to refrain from willfully and wantonly injuring him. The defendant's contention throughout has been that because APCO controls a dangerous instru-

---

17. In *Cline*, 172 W.Va. at 774, 310 S.E.2d at 840, we quoted Syllabus Point 1 of *Chambers v. Smith*, 157 W.Va. 77, 198 S.E.2d 806 (1973), which states:

> "Although Rule 50(a) of the West Virginia Rules of Civil Procedure expressly provides that a party may introduce evidence upon the refusal of his motion for a directed verdict made at the close of his opponent's case, introduction of evidence at that point of the trial constitutes a waiver of the objection to the sufficiency of the evidence unless the motion for a directed verdict is renewed after all the evidence is in and the parties have rested."

Contrary to the editorial comment in the annotations to Rule 50 found in West Virginia Rules at 87 (Michie 1991), the rule discussed in *Chambers* is the same as our current Rule 50(a) and (b).

18. We note that effective December 1, 1991, Rule 50 of the Federal Rules of Civil Procedure has been substantially altered and is no longer similar to our Rule 50. In reference to Federal Rule 50 prior to its 1991 amendment, this statement is found in Section 50.05 at 50-43 to 50-44 of 5A Moore's Federal Practice (1991):

> "Rule 50(a) expressly provides that a party may introduce evidence after making an unsuccessful motion for directed verdict at the close of his opponent's case, without having specifically reserved the right to do so. Nevertheless, the courts have adhered to the longstanding rule that the introduction of evidence at that point constitutes a waiver of the objection to the sufficiency of the evidence unless the motion is renewed at the time when all the evidence is in." (Footnotes omitted).

mentality, it owed him a high degree of care. Since the law in the majority opinion is new law, neither party attempted to comport with it in developing a record below.

Consequently, it seems immensely unfair for the majority to proceed to determine that the defendant failed to present sufficient evidence to establish a *prima facie* case of liability under this standard, when neither the plaintiff (nor any other mortal) had the foggiest notion at the time of trial that this standard would become the law of this state.

For example, the majority concludes that there was not sufficient evidence presented by the plaintiff of constant intrusions in the area of the tower. Perhaps such evidence was available, but how would the plaintiff have known prior to the filing of the majority opinion that it would be needed to make a *prima facie* case? At trial, the defendant did present evidence of injuries that had occurred when persons climbed other such towers. However, to meet requirement (1) of the majority's standard, it isn't necessary to show that injuries have resulted from such intrusions.[1] In view of the fact that the tower in question is situate in a public recreational park, such evidence of intrusions is probably available—had the plaintiff known he was under any obligation to present it.

The majority should have remanded this case so that the plaintiff could have a fair opportunity to make a *prima facie* case now that the law has been enunciated on what is required. Perhaps the plaintiff would fail if given that opportunity; perhaps not. As a bottom line proposition, however, it's grossly unfair to develop a new standard of law and then tell a litigant he failed to comply with it before he knew about it. Otherwise, litigants will need their crystal balls when they go to court.

Based upon the foregoing reasons, I concur in part and dissent in part from the majority's opinion.

NEELY, Justice, concurring:
(Filed Jan. 8, 1992)

I concur with finding APCO not liable to the trespasser, Mr. Huffman. However, in light of Justice Workman's separate opinion, I feel compelled to discuss the putative new rules about duties to trespassers.

I do not agree with the dicta in the majority opinion that would create new ways to hold property owners liable for injuries to trespassers. As the majority correctly states, "[W]ith regard to a trespasser, a possessor of property only need refrain from wilful or wanton injury." *See* maj. op. 187 W.Va. at 4, 415 S.E.2d at 148. I don't understand why the majority opinion then goes on to speculate that perhaps there should be liability when: (1) the possessor knows or should know that trespassers constantly intrude in an area where a dangerous condition is located; (2) the possessor is aware that the condition is likely to cause serious bodily injury or death to trespassers; (3) the possessor has reason to believe that trespassers will not discover it; and, (4) the possessor has failed to exercise reasonable care adequately to warn the trespassers of the condition. *Id.* 187 W.Va. at 8, 415 S.E.2d at 152. This sounds like the "attractive nuisance" doctrine for adults which West Virginia has always (at least *explicitly*) rejected even for children! *See, e.g., Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964); *Justice v. Amherst Coal Co.,* 143 W.Va. 353, 101 S.E.2d 860 (1958); *Waddell v. New River Co.,* 141 W.Va. 880, 93 S.E.2d 473 (1956); *Tiller v. Baisden,* 128 W.Va. 126, 35 S.E.2d 728 (1945).

The majority opinion in the case before us attempts to adumbrate a duty to trespassers that has never been the law and never will be the law with my vote. A businessman may own a building into which burglars regularly trespass. He may know that such felons routinely seek entry through the skylight and that the skylight is inherently dangerous for the purpose of felonious entry because of loose

---

1. Some evidence such as would go toward satisfying requirement (1) might not have even been admissible at trial.

beams in the rafters. Under the dicta of Syllabus Point 4, the businessman must either place a sign (lighted at the businessman's expense during the hours of darkness) next to the skylight warning burglars to find a better route, or suffer liability for injuries to unwary burglars. This is the type of ludicrous result that makes courts look stupid!

Property owners do not owe a duty of care to trespassers, period. *See, e.g., Miller v. Monongahela Power Company,* 184 W.Va. 663, 668, 403 S.E.2d 406, 411 (1991); *Simmons v. Chesapeake & O. Ry. Co.,* 97 W.Va. 104, 107, 124 S.E. 503, 504 (1924).

The "excess fat" in the majority opinion is not necessary to the decision of this case, is contrary to our established principles, and probably is not what a majority of this Court would decide if the question were squarely presented to us. Indeed, this is the *exact* reason that this case was *not* remanded for further proceedings in which the plaintiff could attempt to develop a case under the putative new rules.

Much of law, alas, is explainable only in terms of mechanics: on a multi-member court, you can only argue in conference about so many things for so long before the whole operation comes unravelled. This is particularly true for cases like this one, decided at the end of a busy term. Indeed, courts are in the case-deciding business; law professors are in the reason-giving business! *See* H. Berman, *Law and Revolution: The Formation of the Western Legal Tradition* (Cambridge, Mass.: Harvard University Press, 1983). All courts, from the U.S. Supreme Court on down, would serve the bar better if they decided more cases with shorter opinions.

All judges should recognize that we are not writing for the ages; the shelf life of law is about 180 days or the next vacancy on the court—whichever shall first occur. Our job is simply to tell the world what the law is today. Certainly at the level of the U.S. Supreme Court, there is little need for separate opinions that recycle (unpublished) law review articles to concur with parts I, III, IV and VIII of the majority opinion, dissent to parts II, V and VI, and concur with the result but dissent to the reasoning of part VII. Even a first year law student can tell the difference between genuine thought instructed by political experience and the pseudo-scholarship of young law clerks put on autopilot!