# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2021 Term**

_____

**No. 19-1077**

_____

**FILED**
**June 1, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**RONALD A. GABLE,**
Petitioner

v.

**DEBORAH GABLE, and**
**JOHN DOE(S),**
Respondents

_____

**Appeal from the Circuit Court of Ohio County**
**The Honorable David J. Sims, Judge**
**Civil Action No. 19-C-167**

**REVERSED AND REMANDED**

_____

**Submitted: March 17, 2021**
**Filed: June 1, 2021**

James A. Villanova, Esq.                Perry W. Oxley, Esq.
Michael E. Metro, Esq.                   David E. Rich, Esq.
Villanova Law Offices, P.C.              Oxley Rich Sammons
Pittsburgh, Pennsylvania                 Huntington, West Virginia
Counsel for the Petitioner               Counsel for the Respondents

**JUSTICE HUTCHISON** delivered the Opinion of the Court.

**CHIEF JUSTICE JENKINS and JUSTICE ARMSTEAD** dissent and reserve the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.     "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.     "An interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de nov*o review."  Syl. pt. 4, *Keesecker v. Bird*, 200 W. Va. 667, 490 S.E.2d 754 (1997).

3.     "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)."  Syl. pt. 3, *Chapman v. Kane Transfer Co*., 160 W. Va. 530, 236 S.E.2d 207 (1977).

4.     "The general rule is that matters of defense should not be anticipated by the plaintiff, but that all such matters should be shown by the opposite party in his pleadings."  Syl. pt. 7, in part, *Rhodes v. J.B.B. Coal Co*., 79 W. Va. 71, 90 S.E. 796 (1916).

5.     Under Rule 8(a) of the West Virginia Rules of Civil Procedure, a plaintiff's complaint need not anticipate or attempt to plead around potential defenses that may be raised by the defendant.  A complaint is not required to contain any information about defenses and may not be dismissed, under the guise of Rule 12(b)(6), for that omission.

6. "The common law distinction between licensees and invitees is hereby abolished; landowners or possessors now owe any non-trespassing entrant a duty of reasonable care under the circumstances. We retain our traditional rule with regard to a trespasser, that being that a landowner or possessor need only refrain from willful or wanton injury." Syl. pt. 4, *Mallet v. Pickens*, 206 W. Va. 145, 522 S.E.2d 436 (1999).

7. "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Syl. pt. 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988).

8. "In determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury." Syl. pt. 6, *Mallet v. Pickens*, 206 W. Va. 145, 522 S.E.2d 436 (1999).

9. "A trespasser is one who goes upon the property or premises of another without invitation, express or implied, and does so out of curiosity, or for his own

purpose or convenience, and not in the performance of any duty to the owner." Syl. pt. 1, *Huffman v. Appalachian Power Co.*, 187 W. Va. 1, 415 S.E.2d 145 (1991).

10.    Whether an entrant to property is a trespasser is a question of fact.

11.    "Where there is any doubt about the meaning or intent of a statute in derogation of the common law, the statute is to be interpreted in the manner that makes the least rather than the most change in the common law." Syl. pt. 5, *Phillips v. Larry's Drive-In Pharmacy, Inc.*, 220 W. Va. 484, 647 S.E.2d 920 (2007).

12.    "Statutes in derogation of the common law are strictly construed." Syl. pt. 1, *Kellar v. James*, 63 W. Va. 139, 59 S.E. 939 (1907).

13.    Under West Virginia Code § 55-7-28(a) (2015), whether a danger was open, obvious, reasonably apparent or as well known to the person injured as it was to the owner or occupant is a question of fact.

**HUTCHISON, Justice**:

In this appeal from the Circuit Court of Ohio County, we examine an order dismissing a complaint in a premises liability case. The complaint alleged that the defendant owed the plaintiff a duty to keep the porch and stairs of her home safe but breached that duty by allowing "golf balls and other objects and debris" to accumulate on the porch and adjacent steps. The plaintiff contends that during a visit to the defendant's house, as he exited the front porch, an object on defendant's front stairs caused him to slip, fall, and be seriously injured.

The defendant moved to dismiss the complaint pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, arguing that it failed to state a claim upon which relief could be granted. The circuit court granted the defendant's motion and dismissed the complaint. The circuit court concluded that, because the complaint did not allege facts demonstrating that the plaintiff was *not* a trespasser on the defendant's porch, then the plaintiff effectively *was* a trespasser who was owed no duty of care. Alternatively, after weighing the facts contained in the defendant's motion to dismiss and the plaintiff's response, the circuit court decided that any hazard on the defendant's steps, such as a golf ball, could easily be seen; because the complaint did not allege that the hazard was *not* open and obvious, it could not be the basis for imposing liability on the defendant.

We find the circuit court plainly erred in making factual determinations based upon assertions in the defendant's motion to dismiss. Moreover, we take this opportunity

to reaffirm our century-old rule that a plaintiff's complaint need only plead a cause of action; a plaintiff is under no duty to anticipate or attempt to defuse the defenses that might be raised in the defendant's answer. The plaintiff's complaint asserted that the defendant owed him a duty of care, alleged that the defendant breached that duty, and claimed that the plaintiff was injured as a proximate result of the breach. The plaintiff was under no obligation to anticipate and plead around any and all possible claims that might be asserted by the defendant – including a claim that the plaintiff might have been a trespasser or that a hazard was "open and obvious."

As set forth below, we reverse the circuit court's dismissal order, reinstate the plaintiff's complaint, and remand the case for further proceedings.

## I. Factual and Procedural Background

In this appeal, we consider whether a plaintiff's complaint sufficiently asserts a claim upon which relief can be granted. Because the preference is to decide cases on their merits, we must construe the complaint in the light most favorable to the plaintiff and take all allegations in the complaint as true. *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, ___ W. Va. ___, ___, 854 S.E.2d 870, 877 (2020).

The complaint alleges that on September 18, 2017, plaintiff Ronald A. Gable visited a residence in Wheeling, West Virginia. The residence has a front porch and front steps, and the plaintiff went on to the porch. The complaint maintains that there were "golf balls and other objects and debris . . . [on] the surface of the aforesaid steps and front

2

porch[.]" The plaintiff asserts that, because of this debris, he slipped and fell to the ground, "severely and permanently injuring himself."[1]

The complaint further alleges that the property is owned and controlled by the defendant, Deborah Gable.[2] The complaint avers that the defendant "had a duty to maintain the aforesaid front steps in a reasonably safe condition," and that "[a]s a direct and proximate result of the [d]efendant's breach of said duty, the [p]laintiff has incurred damages . . . for which the [d]efendant is liable."

The defendant moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. *See* W. Va. R. Civ. Pro. Rule 12(b)(6). Specifically, the defendant asked the circuit court to dismiss the complaint because (1) the plaintiff was a trespasser on the defendant's property and, contrary to the allegation in the complaint, the defendant owed him no duty under the law; and (2) the defendant owed the

---

[1] The complaint alleges the plaintiff has damages that include past and future physical pain and suffering; past and future mental pain and suffering; past and future medical expenses; and the loss of capacity to enjoy life.

[2] The plaintiff's complaint also lodges allegations against an unknown "John Doe," anticipating that "unknown persons, associates, corporations or . . . other entities . . . may be the correctly named Defendant[.]" Because this case is at the pleading stage, no discovery has been conducted, and the parties appear to agree that the property at issue is owned and controlled solely by defendant Deborah Gable, we couch our opinion as though Ms. Gable is the sole defendant. We leave to the circuit court the future resolution of any remaining issues regarding the proper parties in this action.

3

plaintiff no duty of care because the items that the plaintiff "allege[d] he slipped on were open and obvious to anyone paying attention."

To support her arguments, the defendant's motion to dismiss asserted various new facts not raised in the complaint. These factual allegations are not supported by affidavits or any other substantive evidence in the record.

First, the defendant's motion averred that the plaintiff was "a trespasser on her property." The motion pointed out that the plaintiff is the father of the defendant. The defendant claimed that the "relationship between the two has been acrimonious for some time," culminating in an earlier lawsuit over the ownership of the defendant's residence. The defendant's motion also claimed that the "parties have not communicated civilly for years," that the plaintiff "had been told previously he was not welcome on the property," and that the plaintiff "knows he is not welcome on the [d]efendant's property[.]" The motion went on to assert that the plaintiff "showed up unannounced and was not invited onto the premises by [the d]efendant," and therefore was a trespasser who was owed no duty of care by the defendant. In summary, the motion contended that "[t]he instant suit is nothing more than another attempt to harass the [d]efendant by advancing a claim which is clearly unsupported by the law."

Second, the defendant argued that even if she did owe the plaintiff a general duty of ordinary care, she owed "no duty of care to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to

4

the owner or occupant[.]" W. Va. Code § 55-7-28(a) (2015). The defendant suggested that, factually, the plaintiff might say in his case that "repair work was being performed on the porch" and say that the porch was "covered in paint" and "paint flakes" so as to have "made the debris on the steps unnoticeable." Still, the defendant contended that a reasonably careful person would have seen the open, obvious, and reasonably apparent dangers like "golf balls and other objects and debris" on the porch or, because of all the paint and paint flakes, would have recognized that the front porch and steps were not a safe point to access the house. Either way, on these facts, the defendant contended that the plaintiff's complaint failed to state a claim upon which relief could be granted.

In his response to the defendant's motion to dismiss, the plaintiff also alleged new facts and/or interpretations of the facts; however, he attached several affidavits in support of these new allegations. First, the plaintiff's response alleged facts to show he was not a trespasser, and he argued that if there was any dispute on the question, it was one of fact. The plaintiff noted that when he fell, he was a 78-year-old retired steelworker and that his defendant-daughter was aged 55. The plaintiff admitted that his relationship with the defendant began to deteriorate in 2011, yet around the same time he purchased the residence at issue for the defendant's use. The defendant paid rent to the plaintiff until 2015 when the plaintiff says he "signed paperwork giving her control of the property." The plaintiff contends that, several times thereafter, he visited his daughter at the residence. The plaintiff also said that the defendant never "informed me that she no longer wished to communicate or that my presence at her home was unwelcome. I was never asked to leave

5

the property by her or anyone else. My daughter [the defendant] never indicated that I was not welcome at the property."

Moreover, the plaintiff asserted that he visited his daughter's home on September 18, 2017, to inform her of the death of Richard Dyer, who was the father-in-law of one of his sons. At oral argument, plaintiff's counsel expanded upon this allegation and pointed out that the defendant is a pastor. Apparently, the plaintiff was visiting the residence to ask the defendant if she would, on behalf of her brother, say a few words at Mr. Dyer's funeral. Accordingly, the plaintiff argued that any allegation he was a "trespasser," and therefore was not owed a duty of care, was a question of material fact to be developed in discovery and, eventually, to be resolved by a factfinder. The plaintiff argued these factual disputes cannot be resolved through a motion to dismiss the complaint.

Second, the plaintiff's response addressed the defendant's argument that the fall-causing hazard was "open and obvious." The plaintiff described his fall and explained that, from his viewpoint, the object he slipped on was not "open and obvious" as claimed by the defendant. The plaintiff stated that he knocked on the front door located on the front porch of the residence and, receiving no answer, turned to leave and started back down the stairs when he fell. The plaintiff alleges that his fall was caused by "a small plastic ball located in the crease of the steps between the riser and tread," that the "ball was hidden by the angle of the steps, paint chips, and other debris," and therefore was "neither open, nor obvious." The plaintiff said the toy ball, "a little smaller than a golf ball," was hidden from view as he descended the stairs. As the plaintiff began to fall, he claims he "felt the ball

6

roll under my foot" and "saw the ball rolling down when and after I fell." The plaintiff asserted that from his personal perspective, the hazard was not open, obvious, or reasonably apparent, and therefore that dismissal of his complaint was improper. Again, the plaintiff contended that the factfinder should be permitted to consider whether he could, or could not, see and avoid the hazard.

In an order dated October 30, 2019, the circuit court adopted the defendant's arguments and dismissed the complaint under Rule 12(b)(6). First, the circuit court concluded that the plaintiff's complaint effectively admitted that he was on the defendant's "property without her invitation, express or implied" and that he entered the property "for his own purpose or convenience." Hence, the circuit court ruled that the plaintiff was a trespasser on the defendant's porch when he slipped and fell and, therefore, was owed no duty of ordinary care. Second, the circuit court found that the plaintiff's brief in response to the defendant's motion to dismiss "only creates more confusion as to the facts he is alleging," and that his "shifting version of events renders his claim that the danger was not open and obvious dubious at best." The circuit court declared that "[a] golf ball, given the very nature of its design, is typically easily seen," and that "[a] reasonably prudent person would have seen a golf ball on the steps . . . and exercised reasonable care in avoiding such an item." Hence, the circuit court concluded the plaintiff's complaint failed to state a claim upon which the court could grant relief.

The plaintiff now appeals the circuit court's October 30, 2019, order dismissing his complaint against the defendant.

7

## II. Standard of Review

A circuit court's decision that a complaint fails to state a claim on which relief can be granted is a ruling of law, and we review such a decision de novo. *See* Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."). The parties' arguments in this appeal also challenge the circuit court's interpretation and application of Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. As we have often stated, "[a]n interpretation of the West Virginia Rules of Civil Procedure presents a question of law subject to a *de novo* review." Syl. pt. 4, *Keesecker v. Bird*, 200 W. Va. 667, 490 S.E.2d 754 (1997).

## III. Discussion

The plaintiff argues the circuit court erred in its application of Rule 12(b)(6) to his case, and he asserts that the circuit court effectively required him to anticipate and plead facts in his complaint to rebut defenses that might be pleaded by the defendant. Hence, our decision begins with the well-trod guidelines for reviewing motions to dismiss under Rule 12(b)(6), and we consider the circuit court's determination that the plaintiff was required to anticipatorily plead that he was not a trespasser, and to anticipatorily plead that the hazard he slipped on was not open and obvious. We then turn to the circuit court's application of the law regarding trespassing and the law of open and obvious hazards.

## A. Anticipating Defenses in a Complaint

Rule 8(a)(1) of the West Virginia Rules of Civil Procedure requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 12(b)(6) of those same Rules permits a defendant to ask the circuit court to dismiss all or part of the plaintiff's complaint for "failure to state a claim upon which relief can be granted." "A motion under Rule 12(b)(6) tests the adequacy of the claims and the notice provided by the allegations in the pleading." *Mountaineer Fire & Rescue Equip.*, ___ W. Va. at ___, 854 S.E.2d at 882. Thus, for a complaint to survive a motion to dismiss under Rule 12(b)(6), the circuit court must do nothing more than ensure that the complaint contains a short and plain statement of a claim showing that the plaintiff is entitled to relief.

"When a Rule 12(b)(6) motion is made, the pleading party has no burden of proof. Rather, the burden is upon the moving party to prove that no legally cognizable claim for relief exists." *Id.* "A trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do substantial justice." *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007). Accordingly, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Syl. pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977). A circuit court weighing the

9

sufficiency of a complaint should view the motion to dismiss with disfavor, should presume that all of the plaintiff's factual allegations are true, and should construe those facts and the inferences arising from those facts in the light most favorable to the plaintiff. *Chapman*, 160 W. Va. at 538, 236 S.E.2d at 212. "The task of a court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Mountaineer Fire & Rescue Equip.*, ___ W. Va. at ___, 854 S.E.2d at 882 (citation omitted).

"Taken as a whole, the West Virginia Rules of Civil Procedure establish the principle that a plaintiff pleading a claim for relief need only give general notice as to the nature of his or her claim." *Id*, ___ W.Va. at ___, 854 S.E.2d at 883. Stated simply, the West Virginia Rules of Civil Procedure reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and manifest a preference for the resolution of disputes on the merits, not on technicalities of pleading.[3]

A motion to dismiss tests the legal sufficiency of a complaint. Therefore, the issue for the circuit court is *not* whether the plaintiff can later prove the case as pleaded,

---

[3] *See*, *e.g.*, *Jaswant Sawhney Irrevocable Tr., Inc. v. D.C.*, 236 A.3d 401, 405-06 (D.C. 2020) (The Federal Rules of Civil Procedure "reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and manifest a preference for resolution of disputes on the merits, not on technicalities of pleading[.]" (Cleaned up)); *Sticklen v. Kittle*, 168 W. Va. 147, 163, 287 S.E.2d 148, 157 (1981) (The Rules of Civil Procedure "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

but whether the complaint is legally sufficient to state a claim upon which relief can be granted.[4]  A corollary to this statement is just as obvious: a complaint, standing alone, states a claim on which relief may be granted whether or not some defense is potentially available to an opposing party.  Rule 8(a) of the West Virginia Rules of Civil Procedure only requires a complaint to "contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks."  Rule 8(c) places the burden exclusively upon the defendant to "set forth affirmatively" in the

---

[4] *See*, *e.g.*, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."); *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the alleged facts is improbable, and that a recovery is very remote and unlikely.") (Cleaned up); *Grayson v. AT & T Corp.*, 15 A.3d 219, 228–29 (D.C. 2011) ("The only issue on review of a dismissal made pursuant to Rule 12(b)(6) is the legal sufficiency of the complaint; and a complaint should not be dismissed because a court does not believe that a plaintiff will prevail on his claim.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.") (Cleaned up); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1131 (N.D. Cal. 2013) (The plaintiff "may or may not be able to prove that a reasonable consumer would have been misled by Defendants' alleged mislabeling practices if and when this case ever makes it to trial, but neither Rule 8(a), nor the Supreme Court's decisions . . . require a plaintiff to prove her case the moment she files her complaint."); *Acevedo-Torres v. Municipality of Arecibo*, 857 F. Supp. 2d 231, 236 (D.P.R. 2012) ("Although Plaintiff's claim might not be successful on the merits, it does survive the motion to dismiss stage."); *Sisemore v. Master Fin., Inc.*, 60 Cal. Rptr. 3d 719, 727 (Cal. App. 2007) ("It is not the ordinary function of a [motion to dismiss] to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct.  A [motion to dismiss] tests only the legal sufficiency of the pleading.  Thus, as noted, in considering the merits of a [motion to dismiss] the facts alleged in the pleading are deemed to be true, however improbable they may be."); *Vogel v. Liberty Mut. Ins. Co.*, 571 N.W.2d 704, 706 (Wis. Ct. App. 1997) ("The issue is not whether the plaintiff can prove the case as pled, but whether the complaint is legally sufficient to state a claim upon which relief can be granted.").

11

answer any matter "constituting an avoidance or affirmative defense" to the plaintiff's complaint. The basic aim of the Rules of Civil Procedure, as expressed in Rule 1, is to "secure the just, speedy, and inexpensive determination" of every lawsuit, and that goal is given emphasis by the requirement in Rule 8(f) that complaints, answers, and other pleadings are to be construed liberally.[5]

This Court has long said that a complaint need not anticipate or attempt to plead around the defenses that might be raised by the defendant, and we did so before the 1938 adoption of the Federal Rules of Civil Procedure and the 1960 adoption of the West Virginia Rules of Civil Procedure. In 1916, we held that under common-law rules of pleading, "[t]he general rule is that matters of defense should not be anticipated by the plaintiff, but that all such matters should be shown by the opposite party in his pleadings." Syl. pt. 7, in part, *Rhodes v. J.B.B. Coal Co.*, 79 W. Va. 71, 90 S.E. 796 (1916). The Court said the same thing in 1875, albeit in a considerably less-elegant manner. *See* Syl. pt. 1, *Simmons v. W. Va. Insurance Co.*, 8 W. Va. 474 (1875) ("Matter in defeasance of the

---

[5] The United States Supreme Court once reflected that the Rules of Civil Procedure were adopted to eliminate "procedural booby traps":

> These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966).

12

plaintiff's action need not be stated in the declaration; wherever there is a circumstance, the omission of which is to defeat the plaintiff's right of action, prima facie well founded, whether called by the name of a proviso, or a condition subsequent, it must, in its nature, be a matter of defence, and ought to be shown in the pleading, by the opposite party.").

Other courts, applying the modern Rules of Civil Procedure, have likewise universally ruled that "[c]omplaints need not anticipate or attempt to defuse potential defenses." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). "A complaint states a claim on which relief may be granted whether or not some defense is potentially available. This is why complaints need not anticipate and attempt to plead around defenses." *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). *See also*, *Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980) (finding "no basis for imposing on the plaintiff an obligation to anticipate" an affirmative defense like qualified immunity in a complaint);[6] *Nobre on behalf of K.M.C. v. Louisiana Dep't of Pub. Safety*, 935 F.3d

---

[6] Admittedly, without citing *Gomez* or its progeny, this Court recently deviated from the general rule and held that when a "complaint fails to adequately plead specific facts that . . . defeat a qualified immunity defense," and the circuit court defers ruling on a motion to dismiss the complaint under Rule 12(b)(6), that order is immediately appealable. *See* Syl. pt. 3, *W. Va. State Police v. J.H.*, ___ W. Va. ___, 856 S.E.2d 679 (2021). The Court went on to conclude, based on the limited record presented, that the plaintiff's complaint failed to plead specific facts sufficient to show his claim against the State Police was not precluded by the doctrine of qualified immunity. We take this opportunity to emphasize that our holding in *W. Va. State Police v. J.H.* is limited to cases involving qualified immunity, because in those cases we have insisted upon a "heightened pleading standard." *See generally*, *Hutchison v. City of Huntington*, 198 W. Va. 139, 149, 479 S.E.2d 649, 659 (1996) ("We believe that in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff.").

Continued . . .

437, 442 (5th Cir. 2019) ("A plaintiff is not required to anticipate or overcome affirmative defenses, such as expiration of the statute of limitations, in the complaint."); *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) ("Rule 8 does not require plaintiffs to plead around affirmative defenses."); *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019) ("Plaintiffs are not ordinarily required to plead allegations relevant to potential affirmative defenses to an asserted claim."); *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010) ("Exhaustion of administrative remedies is an affirmative defense that need not be specially pleaded by the inmate or demonstrated in the complaint."); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in

*Hutchison* makes clear that there is a panoply of procedural tools available to trial courts and practitioners to ensure that the claims in a plaintiff's complaint are clear to all, tools far gentler than the punitive act of dismissal. Justice Cleckley, writing for the Court in *Hutchison*, identified these varied tools. For instance, if a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," then the defendant may ask for, and a trial court may order, a more definite statement under Rule 12(e). Rule 12(e) permits the plaintiff to respond with "a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Hutchison*, 198 W. Va. at 150, 479 S.E.2d at 660 (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). Moreover, Rule 7(a) permits a court to "order a reply to an answer," thereby enhancing the plaintiff's ability to clarify the claims in the complaint. Additionally, the trial court may compel the plaintiff to file an amended complaint. "Of course, if the individual circumstances of the case indicate that the plaintiff has pleaded his or her best case, there is no need to order more detailed pleadings. If the information contained in the pleadings is sufficient to justify the case proceeding further, the early motion to dismiss should be denied." *Id.* When weighing a proper course, the goal of the trial court should be the same as that espoused by the Rules of Civil Procedure: to have the case heard on the merits and not on the pleadings of the parties' lawyers.

14

[their] complaint. Not surprisingly, our cases say that a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.") (Cleaned up).

Put simply, "[c]omplaints need not contain any information about defenses and may not be dismissed for that omission." Elizabeth M. Bosek, *et al.*, 4 Cyclopedia of Federal Procedure § 14:187 (3d ed. 2021). As one federal court said, "[o]rders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). *See also*, *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint."); *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses."); 71 C.J.S. Pleading § 140 (2021) ("A complaint should not state and attempt to controvert matters that the defendant might raise in the answer. It is a general principle, both under the common-law practice and under procedural statutes and rules of practice, that a plaintiff's initial pleading need not, and should not, by its averments, anticipate a defense thereto and negative or avoid it, or negative the existence of defensive

15

matters, or anticipate and negative matters that should come more properly from the other side.").[7]

The focus of our liberal notice pleading system is to ensure that claims are determined on their merits, not on the tidiness or artfulness of the plaintiff's pleadings. Requiring a plaintiff to plead detailed facts of their claims at the outset, or to reflect on the defenses that might be interposed in response to those claims, interferes with that goal in numerous ways.

> First, and most importantly, the number of factual details potentially relevant to any case is astronomical, and requiring a plaintiff to plead facts that are not obviously important and easy to catalogue would result in "needless controversies" about what is required that could serve only to delay or prevent trial. Most details are more efficiently learned through the flexible discovery process. "Instead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); *see also Dioguardi v. Durning*, 139 F.2d 774, 775 (2d Cir. 1944) (describing attempts to force all facts into the complaint as "judicial haste which in the long run makes waste"). Second, a plaintiff might sometimes have a right to relief without knowing every factual detail supporting its right; requiring the plaintiff to plead those unknown details

---

[7] Rule 12(f) of both the Federal and the West Virginia Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." One treatise suggests that Rule 12(f) motions to strike "are not favored" and are often "considered purely cosmetic or 'time wasters.'" Arthur R. Miller, *et al.*, 5C Federal Practice & Procedure § 1382 (2020). However, the treatise notes that under Rule 12(f), "[a]llegations in a complaint that anticipate defenses . . . may be stricken." *Id.  See McNeil Const. Co. v. Livingston State Bank*, 265 F.2d 308, 312 n.8 (9th Cir. 1959) (Striking allegations in a complaint under Rule 12(f) because "[t]he obvious purpose of these allegations was to anticipate and avoid defenses— something a complaint is not required to do.").

16

> before discovery would improperly deny the plaintiff the opportunity to prove its claim.

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779–80 (7th Cir. 2007) (cleaned up). *See also* Richard L. Marcus, *The Revival of Fact Pleading Under the Federal Rules of Civil Procedure*, 86 Colum. L. Rev. 433, 468 (1986) ("Where the court requires detailed support for a legal conclusion [in a complaint], analysis of the details may permit the court to conclude confidently that the plaintiff has no case. But where the plaintiff is unable to provide details because only the defendant possesses such information, no such confidence is possible. To the contrary, it may be that the defendant has so effectively concealed his wrongdoing that the plaintiff can unearth it only with discovery. To insist on details as a prerequisite to discovery is putting the cart before the horse."). One commentator suggested that, if courts abandon the "long-proscribed form of anticipatory pleading" and require a plaintiff to "plead self-protectively," then complaints might soon resemble "'phone book' pleading." Arthur R. Miller, *From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure*, 60 Duke L.J. 1, 29 (2010).

Further, Rule 8(b) requires a defendant's answer to "admit or deny the averments" upon which the plaintiff relies. When a plaintiff incorporates an allegation into a complaint regarding an anticipated defense, "the defendant is put in somewhat of a quandary as to how to respond" in the answer: if the defendant admits or denies the allegation regarding the defense, an improperly crafted response may constitute an "unintended waiver" of the defense. 5 Fed. Prac. & Proc. Civ. § 1276 (3d ed. 2020). Hence, "the defendant is well advised to plead the matter affirmatively under Rule 8(c)[.]"

17

*Id.* *See*, *e.g.*, *Wilbert Funeral Servs., Inc. v. Custom Servs. Unlimited, LLC*, No. 10 C 3272, 2010 WL 4627663, at \*2 (N.D. Ill. Nov. 5, 2010) ("Just as a plaintiff can plead itself out of court by making factual allegations that defeat its claim, . . . a defendant's allegations can fatally undermine an affirmative defense."). In other words, requiring a plaintiff to actively plead allegations anticipating defenses that may be mounted by the defendant not only unnecessarily complicates the defendant's ability to answer the complaint, but it also may unintentionally cause the defendant to imperil its available defenses.

Accordingly, we hold that under Rule 8(a) of the West Virginia Rules of Civil Procedure, a plaintiff's complaint need not anticipate or attempt to plead around potential defenses that may be raised by the defendant. A complaint is not required to contain any information about defenses and may not be dismissed, under the guise of Rule 12(b)(6), for that omission.

In the instant case, the circuit court violated this cardinal rule of pleading, and it dismissed the complaint because the plaintiff failed to anticipate and plead facts to rebut potential defenses available to the defendant. The circuit court concluded that because the complaint did not allege that the plaintiff was invited onto the defendant's property, then the complaint is an "admission [that the plaintiff] meets the definition of a trespasser[.]" Similarly, because the complaint did not allege that the "golf balls and other objects and debris" were *not* open and obvious to the plaintiff, then the circuit court seems to have presumed that the hazards were open, obvious, and should have been avoided by the plaintiff. As a matter of law, the plaintiff's only obligation was to plead a claim. The

18

plaintiff was under no obligation to plead facts in anticipation of the defendant's theory of the case.

We now turn to the legal theories that the circuit court ruled that the plaintiff was required to anticipate in his complaint.

## B. Duty of Care Owed to the Plaintiff

The parties dispute the duty of care owed by the defendant to the plaintiff. The plaintiff contends, as he alleged in his complaint, that the defendant owed him a duty of due care. The defendant's argument is confusing but seems to allege either that the plaintiff's complaint failed to allege that the plaintiff was not a trespasser, or that the evidence asserted in the defendant's motion to dismiss sufficiently showed the plaintiff was a trespasser. Either way, the defendant argues that the circuit court correctly found the plaintiff was a trespasser and that the defendant owed the plaintiff no duty of care.

In any negligence or tort case, a plaintiff is required to show four basic elements: duty, breach, causation, and damages. *See Carter v. Monsanto Co.*, 212 W.Va. 732, 737, 575 S.E.2d 342, 347 (2002) ("[B]efore one can recover under a tort theory of liability, he or she must prove each of the four elements of a tort: duty, breach, causation, and damages."). Attached to the West Virginia Rules of Civil Procedure is an "Appendix of Forms," and these forms demonstrate "the simplicity and brevity of statement which the

19

rules contemplate" for a plaintiff who is drafting a complaint. Form 9 of the Appendix outlines that a negligence complaint must only allege those four basic elements.[8]

We established the standard of care for a premises liability action in *Mallet v. Pickens*, 206 W. Va. 145, 522 S.E.2d 436 (1999). This Court stated in Syllabus Point 4 of that case that "landowners or possessors . . . owe any non-trespassing entrant a duty of reasonable care under the circumstances. We retain our traditional rule with regard to a trespasser, that being that a landowner or possessor need only refrain from willful or wanton injury." Under this formula, a typical visitor (who, prior to *Mallet*, would have been classified as either an invitee or a licensee) should be accorded some measure of due care; a trespasser, whose presence on a property is never anticipated, expected or foreseeable, is afforded no duty of care whatsoever.

---

[8] The West Virginia Rules of Civil Procedure, Form 9, provides the following example of a complaint for negligence encompassing duty, breach, causation, and damages:

> 1. On June 1, 1955, in a public highway called Washington Street in Charleston, West Virginia, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway.
>
> 2. As a result plaintiff was thrown down and had his leg broken and was otherwise injured, was prevented from transacting his business, suffered great pain of body and mind, and incurred expenses for medical attention and hospitalization in the sum of one thousand dollars.
>
> Wherefore plaintiff demands judgment against defendant in the sum of ten thousand dollars and costs.

20

In *Mallet*, we found that in any premises liability case the duty of care is guided by Justice Cardozo's celebrated maxim that "[t]he risk reasonably to be perceived defines the duty to be obeyed[.]" *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 100 (N.Y. 1928). *See Mallet*, 206 W. Va. at 155, 522 S.E.2d at 446. Hence, the foreseeability of an injury is dispositive of the duty owed:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syl. pt. 3, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988). *See also*, *Aikens v. Debow*, 208 W. Va. 486, 490-91, 541 S.E.2d 576, 580-81 (2000) (discussing the theoretical underpinnings of the duty owed by any tortfeasor). We then offered the following guidelines for a trier of fact to measure a defendant's duty of care toward a typical visitor:

> In determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

Syl. pt. 6, *Mallet*, 206 W. Va. at 146, 522 S.E.2d at 437.

In *Mallet*, we repeatedly emphasized that a landowner or possessor owed no duty of care to a trespasser, and only had a duty to refrain from causing willful or wanton injury. We have defined a trespasser as "one who goes upon the property or premises of

21

another without invitation, express or implied, and does so out of curiosity, or for his own purpose or convenience, and not in the performance of any duty to the owner." Syl. pt. 1, *Huffman v. Appalachian Power Co.*, 187 W.Va. 1, 415 S.E.2d 145 (1991). As Justice Starcher once noted, "a landowner doesn't owe a trespasser the time of day." *Self v. Queen*, 199 W. Va. 637, 642, 487 S.E.2d 295, 300 (1997) (Starcher, J., concurring). "Reasonable care does not require actions to protect or warn visitors whose coming is not known or reasonably foreseeable. Since trespassers . . . are often unforeseeable visitors, the standard of reasonable care under the circumstances will not often result in any new liability." Dan B. Dobbs, et al., *The Law of Torts* § 278 (2nd ed. 2015).

As we noted above in Syllabus Point 6 of *Mallet*, a defendant's duty of care is, in part, governed by "the time, manner and circumstances under which the injured party entered the premises." The general rule in society is that people have an implicit invitation during typical waking hours to enter another's land to knock on a front door – unless the circumstances (like fencing and no-trespassing signs) justify a contrary finding. "[T]he knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers[.]" *Breard v. City of Alexandria, La.*, 341 U.S. 622, 626 (1951).[9] As one court found,

---

[9] The *Breard* Court ruled that a city ordinance forbidding "solicitors, peddlers, hawkers, itinerant merchants or transient vendors of merchandise" from entering private property did not violate the First Amendment. The decision was abrogated by *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980), where the Supreme Court found a city ordinance prohibiting door-to-door solicitations of charitable contributions violated the First Amendment.

22

the construction of a driveway or a walkway leading to the entrance of a residence may, in the absence of notice to the contrary, be reasonably construed . . . as an expression of the landowner's consent to . . . entry thereon for the purpose of approaching and entering the house on any lawful mission.

*Smith v. VonCannon*, 197 S.E.2d 524, 529 (N.C. 1973).

The *Restatement of the Law of Torts (Second)* explains the basis for this implicit invitation: "'The well-established usages of a civilized and Christian community' entitle everyone to assume that a possessor of land is willing to permit [a person] to enter for certain purposes until a particular possessor expresses unwillingness to admit him." *Restatement (Second) of Torts*, § 330, cmt. e (1965). As a society, landowners should usually anticipate and offer due care in anticipation of daylight visits by people such as a traveler overtaken by a violent storm, a canvasser at the door of a private house, a social guest, or those in search of children, servants, or other persons. *Id.* Hence, "a private salesperson—absent no-solicitation signs, no-trespass signs, etc.—has implicit permission to approach the house to conduct business with the inhabitants" but "the salesperson must actually engage or attempt to engage the house [owner], or else be seen as a trespasser, snoop, or peeping tom[.]" *Commonwealth v. Ousley*, 393 S.W.3d 15, 29 (Ky. 2013).

More specifically, the United States Supreme Court has described the implied license as permission for a visitor "to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."

*Florida v. Jardines*, 569 U.S. 1, 8 (2013).[10]  The Supreme Court noted it does not take "fine-grained legal knowledge" to understand this permission: "it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters." *Id*.  The principal limitation on this implied license is the time of day.  "Courts have emphasized that the implied license to visit is generally understood to extend during daylight hours." *United States v. Lundin*, 47 F.Supp.3d 1003, 1013 (N.D.Cal. 2014); *see also Jardines*, 569 U.S. at 20 (Alito, J., dissenting) ("Nor, as a general matter may a visitor come to the front door in the middle of the night without an express invitation.").  This nighttime dissolution of the implied license arises from the general disapproval by a civilized community of late-night intrusions.  As the Supreme Court of Kentucky has noted, "Girl Scouts, pollsters, mail carriers, [and] door-to-door salesmen just do not knock on one's door at midnight; and if

_____

[10] *Jardines* is one of many Fourth Amendment cases extending the civil, implied license discussed above into the criminal context.  Called the "knock and talk" rule, courts hold that any individual, including a law enforcement officer without a warrant, has an implicit license to approach the front door of a residence to knock and make inquiries.  *See, e.g., State v. Dorsey,* 234 W. Va. 15, 19, 762 S.E.2d 584, 588 (2014). However, regardless of whether the person knocking is a private citizen or a police officer, the homeowner has no obligation to open the door or speak to the person knocking.  *See Kentucky v. King*, 563 U.S. 452, 469-70 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do.  And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak.").

24

they do, they are more likely to be met by an enraged (and possibly armed) resident than one with a welcoming smile." *Ousley*, 393 S.W.3d at 30.[11]

The question of a person's status on property, that is, whether the person is there with some explicit or implicit right or, having none, is a trespasser, is generally a question of fact governed by the circumstances of the case. In *Ragonese v. Racing Corp. of W. Va.*, 234 W. Va. 706, 769 S.E.2d 495 (2015), we examined a situation where a plaintiff was on a property with permission, but the plaintiff allegedly deviated from that permission and took on the status of a trespasser. In *Ragonese*, rather than cross a casino's property by way of a sidewalk, skyway bridge, or roadway, the plaintiff took a shortcut through a line of shrubbery and down a steep, grassy hillside, whereupon he stepped off a tall retaining wall and was seriously injured. While the defendant insisted that the

---

[11] One treatise recites cases holding that property owners owed a duty of care to entrants who

> entered premises to seek a favor, to use a telephone, to ask directions, to do volunteer work, to use recreational facilities without asking specific permission, to recover an item of personal property left on the premises, to recover an item of personal property left elsewhere but retrieved by the landowner as a favor to the entrant, to obtain some article of value given to the . . . [entrant] by the occupant, or while retrieving a dog or other animal.

Louis A. Lehr, Jr., 2 Premises Liability 3d § 37:11 (2020) (footnotes omitted). The treatise also notes that "[a] stranded motorist who approaches a nearby residence to ask to use a telephone or to borrow a gasoline can," a "motorist who drives onto another's driveway, and the motorist's passengers," and "[d]oor-to-door solicitors" are entitled to a duty of care because they all have "an implied privilege to approach the house." *Id*.

plaintiff's deviation from the walkways, as a matter of law, converted the plaintiff to a trespasser, we concluded that under modern premises liability law the plaintiff's status was a question of fact for a jury. We said that, "[w]here factual issues exist as to whether an invitee has forfeited his or her status by going to a portion of the premises to which the invitation of usage may not extend, those issues should be resolved by a jury." Syl. pt. 3, *Id.* Our holding in *Ragonese* is, however, bound to the unique facts of that case. To clarify our law, we now hold as a general proposition that whether an entrant to property is a trespasser is a question of fact.

In the instant case, the plaintiff's complaint alleged the defendant owned or controlled the porch and steps at issue; alleged the defendant "had a duty to maintain the steps in a reasonably safe condition"; alleged the defendant "breached said duty by failing to remove golf balls and other objects and debris" from the porch and steps; and alleged that as a direct and proximate cause of the defendant's breach of her duty, the plaintiff was injured and has incurred damages. Reading all the allegations and reasonable inferences in the complaint in favor of the plaintiff, we see nothing in the complaint to support the defendant's assertion the plaintiff was a trespasser. Nothing in the complaint suggests that the plaintiff approached the defendant's front door outside of typical waking hours, or deviated from approaching the front door, knocking and then leaving, or bypassed gates and no-trespassing signs. The defendant's allegations that the plaintiff was told to never

26

visit the defendant's house are factual matters outside of the complaint and should not have been considered by the circuit court at this stage in the proceedings.[12]

The complaint satisfies the requirements of Rule 8(a) because it gives firm and fair notice of the basis for the plaintiff's suit. The plaintiff clearly asserted that the defendant owed him a duty of care, he alleged a breach of that duty, and he claimed to have been injured as a result of the breach. The plaintiff has, therefore, stated a claim. The plaintiff had no burden to assert any additional facts or claims to anticipate the defendant's potential theory that the plaintiff was a trespasser. If the defendant wants to test the ability of the plaintiff to prove what he has alleged, she must present a motion for summary judgment or proceed to trial.

---

[12] Because the factual assertions in the defendant's motion to dismiss were not buttressed by any proof (such as affidavits or documentation) they should have been disregarded by the circuit court. However, if the defendant's counsel had presented evidence, and the circuit court had not rejected that evidence, then the circuit court's course would have been dictated by Rule 12(b)(7), which mandates that the motion be treated as one for summary judgment:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

W. Va. R. Civ. Pro. Rule 12(b)(7). *See also U. S. Fid. & Guar. Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965); *Forshey v. Jackson*, 222 W.Va. 743, 671 S.E.2d 748 (2008).

Accordingly, we conclude that the circuit court erred in dismissing the complaint under Rule 12(b)(6) because the plaintiff clearly stated a claim in his complaint that the defendant owed him a duty of due care.

### C. Was the Hazard Open and Obvious?

In *Hersh v. E-T Enterprises, Ltd. P'ship*, 232 W. Va. 305, 752 S.E.2d 336 (2013), this Court abolished the common-law "open and obvious" doctrine. However, in 2015, the Legislature abrogated the common law expressed in *Hersh* and expressly reinstated the doctrine by enacting West Virginia Code § 55-7-28(a). The statute provides:

> A possessor of real property, including an owner, lessee or other lawful occupant, owes no duty of care to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant, and shall not be held liable for civil damages for any injuries sustained as a result of such dangers.

We have noted that, "[w]here there is any doubt about the meaning or intent of a statute in derogation of the common law, the statute is to be interpreted in the manner that makes the least rather than the most change in the common law." Syl. pt. 5, *Phillips v. Larry's Drive-In Pharmacy, Inc.*, 220 W. Va. 484, 647 S.E.2d 920 (2007). This is because "[s]tatutes in derogation of the common law are strictly construed." Syl. pt. 1, *Kellar v. James*, 63 W. Va. 139, 59 S.E. 939 (1907). *See also* Syl. pt. 3, *Bank of Weston v. Thomas*, 75 W. Va. 321, 83 S.E. 985 (1914) ("Statutes in derogation of the common law are allowed effect only to the extent clearly indicated by the terms used. Nothing can be added otherwise than by necessary implication arising from such terms."),

28

The defendant alleged in her motion to dismiss that the object which caused the plaintiff's fall was "open and obvious" and should have been seen and avoided by the plaintiff. The defendant argued, under West Virginia Code § 55-7-28(a), that because the plaintiff did not avoid the "open, obvious, [and] reasonably apparent" danger, she owed him no duty of care and his complaint must be dismissed. The circuit court agreed and, in its dismissal order, rejected the plaintiff's complaint and declared that "[a] golf ball, given the very nature of its design, is typically easily seen," and that "[a] reasonably prudent person would have seen a golf ball on the steps . . . and exercised reasonable care in avoiding such an item."

The plaintiff argues that the circuit court erred because, as the plaintiff's complaint is drafted, the question of whether or not the hazard was open and obvious was a question of fact and not of law. We agree. We hold that under West Virginia Code § 55-7-28(a), whether a danger was open, obvious, reasonably apparent or as well known to the person injured as it was to the owner or occupant is a question of fact. Furthermore, the question of whether the danger or hazard is one contemplated by the statute is a defense that must be raised by the defendant, and not by the plaintiff in his or her complaint. It was error for the circuit court to have dismissed the complaint merely because the plaintiff omitted any allegation that the object that caused his fall was *not* open, obvious, reasonably apparent, or as well known to him as it was to the defendant.

More importantly, it was error for the circuit court to make *factual* determinations in its dismissal order. An order ruling on a Rule 12(b)(6) motion is no place

29

to make factual findings, or to dismiss a complaint because the court believes that the odds of the plaintiff recovering damages is very remote. The complaint gives the defendant fair notice that the plaintiff alleges he fell and was injured because the defendant "fail[ed] to remove golf balls and other objects and debris from the surface" of her steps and porch. Whether those hazards were seen or seeable from the perspective of the plaintiff are questions of fact for future resolution, and not resolution by way of a motion to dismiss the complaint.

We therefore conclude that the circuit court erred in ruling that, under West Virginia Code § 55-7-28(a), the complaint failed to state a claim upon which relief could be granted.

## IV. Conclusion

The circuit court erred in dismissing the plaintiff's complaint in its October 30, 2019, order. The complaint states a claim as required by Rule 8(a) and dismissal under Rule 12(b)(6) was improper. The order is reversed, the plaintiff's complaint is reinstated, and the case is remanded to the circuit court for further proceedings.

Reversed and remanded.

30